UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORMA WALKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 14 C 2513 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| MACY'S MERCHANDISING GROUP, ) | |
| INC., WALMART STORES, INC., ) | |
| REX GARMENTS LTD., and ) | |
| CHARLES KOMAR & SONS, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Norma Walker ("Plaintiff") brings her fourth amended complaint against Macy's Merchandising Group, Inc. ("MMG"), Walmart Stores, Inc. ("Walmart"), Rex Garments Ltd. ("Rex"), and Charles Komar & Sons, Inc. ("Komar") (collectively "Defendants"). (R. 69, Fourth Am. Compl.) Plaintiff alleges numerous strict products-liability and breach of warranty claims against Defendants, seeking to recover for injuries she sustained when her clothing caught fire. (*Id.*) Presently before the Court is Rex's motion to dismiss Counts I through VI for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (R. 98, Mot.) For the reasons stated below, the Court grants Rex's motion.

## BACKGROUND

At some time before January 14, 2014, Plaintiff purchased a Style & Co. Sport brand jacket from a Macy's retail store located in Cook County, Illinois. (R. 69, Fourth Am. Compl. ¶ 17.) Plaintiff's daughter also purchased two sets of Secret Treasures sleepwear, each consisting of a shirt and pants, from a Walmart retail store prior to the incident. (*Id.* ¶ 19.) Plaintiff's daughter gave one of the sleepwear sets to Plaintiff. (*Id.*) On January 14, 2014, Plaintiff was

wearing the jacket and the sleepwear while cooking on her stove when the clothing caught fire. (*Id.* ¶¶ 21-22.) Although Plaintiff attempted to extinguish the flames, she claims that the clothing burned so rapidly that she suffered extensive burns to numerous parts of her body, was hospitalized for months, underwent multiple surgeries, and then spent additional months in rehabilitation therapy. (*Id.* ¶¶ 23-25.)

Plaintiff filed suit in the Circuit Court of Cook County on February 28, 2014, asserting products-liability and breach of warranty negligence claims against Macy's Retail Holdings, Inc. and Walmart.[1] (R. 1-1, Compl.) Walmart removed the lawsuit to this District pursuant to 28 U.S.C. § 1441(b) and 28 U.S.C. § 1332. (R. 1, Notice of Removal.) Plaintiff subsequently filed a motion to remand to state court, (R. 17, Mot. to Remand at 1-2), which this Court denied, (R. 30, Order). The Court dismissed Plaintiff's initial state complaint without prejudice, (R. 16, Min. Order), and granted Plaintiff leave to amend her subsequent federal complaint, (R. 21, Min. Order). On January 11, 2016, Plaintiff filed her fourth amended complaint, which names Rex and Korman as Defendants for the first time. (R. 69, Fourth Am. Compl.) Plaintiff's fourth amended complaint alleges that Rex, a Hong Kong corporation, manufactured the jacket worn during the incident, (*id.* ¶¶ 8-9), while Korman, a New York corporation, made the sleepwear, (*id.* ¶¶ 11-12).

Plaintiff brings three strict products-liability counts against Rex for the allegedly defective manufacturing and design of the sport jacket, and for the alleged defect of the jacket due to inadequate warning. (*Id.* ¶¶ 27-53.) Plaintiff's additional three counts against Rex allege breach of express warranty of fitness, breach of implied warranty of fitness, and negligence.

---

[1] Following initial discovery interrogatories, Plaintiff amended her complaint to name MMG as the proper defendant instead of Macy's Retail Holdings, Inc. (R. 69, Fourth Am. Compl.) MMG is a wholly owned direct subsidiary of Macy's, Inc. that is responsible for the design, development, and marketing of Macy's private label brands and certain licensed brands, whereas Macy's Retail Holdings, Inc. is a corporate entity that operates some of Macy's Illinois stores. (R. 114-3, MMG's Interrog. Answers ¶ 5.)

2

(*Id.* ¶¶ 54-78.) Rex filed the present Rule 12(b)(2) motion to dismiss on April 1, 2016.[2] (R. 98, Mot. at 1-2.) Rex argues that because it has no presence in or contacts with Illinois, this Court cannot lawfully exercise personal jurisdiction over it. (*Id.* at 1.) Plaintiff argues that this Court can properly exercise personal jurisdiction over Rex pursuant to the "stream of commerce" doctrine. (R. 114, Resp. at 2.)

## LEGAL STANDARD

Personal jurisdiction refers to a court's "power to bring an individual into its adjudicative process." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). A district court exercising diversity jurisdiction applies the personal jurisdiction rules of the state in which it is located. *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015) (citation omitted). This Court can thus exercise personal jurisdiction only to the extent that Illinois courts are permitted to do so under the Illinois long-arm statute.[3] *See id.* A complaint does not need to include facts that allege personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). However, a defendant may move for dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). FED. R. CIV. P. 12(b)(2).

If a defendant moves for dismissal based on a lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Kipp v. Ski Enter. Corp of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (citation omitted). Absent an evidentiary hearing, the plaintiff's burden is only to establish a *prima facie* case of personal jurisdiction. *Id.* at 695. When

---

[2] Rex has also filed a motion to extend the discovery deadline. (R. 116.)
[3] Illinois's long-arm statute contains a catch-all provision that allows a court to assert personal jurisdiction for any reason, so long as doing so does not infringe upon due process protections guaranteed by either the Illinois or the U.S. Constitution. *See* 735 ILL. COMP. STAT. 5-2-209(c). For purposes of the catch-all provision, "it is enough to evaluate the limits that the Fourteenth Amendment due process places on state exercises of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715-16 (7th Cir. 2002).

3

ruling on a Rule 12(b)(2) motion to dismiss, the Court accepts all well-pleaded allegations as true, but may also consider outside materials such as affidavits. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). If the defendant submits declarations or other outside materials challenging personal jurisdiction, the plaintiff has an obligation to submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Found*, 338 F.3d at 782-83. Although disputes must be resolved in the plaintiff's favor, unrefuted assertions contained in the defendant's affidavit will be accepted as true. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

## ANALYSIS

The Due Process Clause limits when a state may exercise personal jurisdiction over out-of-state defendants. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004) (citing *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 108 (1987)). The Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties or relations." *N. Grain Mktg.*, 743 F.3d. at 492 (quoting *Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 319 (1945)). A court's exercise of personal jurisdiction is thus proper when the defendant has "minimum contacts with the [forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Philos*, 802 F.3d at 913 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

Courts recognize two distinct forms of personal jurisdiction: general and specific. *Kipp*, 783 F.3d at 697 (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014)). "The nature of the defendant's contacts with the forum state determines the propriety of personal jurisdiction and also its scope—that is, whether jurisdiction is proper at all, and if so, whether it is general or

specific to the claims made in the case." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). General jurisdiction applies to all suits regardless of whether they arise out of the defendant's forum-related activity. *Daimler AG*, 134 S. Ct. at 754. However, it can be exercised only when the defendant has such "continuous and systematic" contacts with the forum state that he or she can be deemed "essentially at home" in the forum state. *Id.* (citation omitted). "The threshold for general jurisdiction is high," because "the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701. Thus, "isolated or sporadic contacts—such as occasional visits to the forum state" are insufficient to support the exercise of jurisdiction. *Id.* A foreign corporation is considered "at home" in its state of incorporation and its principal place of business. *Advanced Tactical Ordnance Sys. v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). Specific jurisdiction is more limited, and requires a plaintiff to show that the controversy between the parties directly arises out of the defendant's "forum-related activity." *Id.*

In support of its motion, Rex submits a declaration from Chow Yick Ping, Rex's managing director, attesting that it is a "Hong Kong Limited Company," located in Hong Kong, and supplying garments that are manufactured in Hong Kong and China. (R. 99-1, Ping Decl. ¶¶ 4-6.) Ping attests that Rex is not registered or incorporated in Illinois, does not have any offices, employees, or property in Illinois, and has never entered into a contract with any party in Illinois. (*Id.* ¶¶ 7-10, 14.) He attests that Rex has supplied garments to MMG, including one of the garments at issue in this case. (*Id.* ¶¶ 16-17.) This garment was manufactured by a company located in Fosham Guangdong, China, and Rex shipped it to Yantian, China, to be delivered to MMG. (*Id.* ¶ 19.) From Yantian, Rex has no control or knowledge of where its garments would

be ultimately sold by distributors, though it believes that MMG shipped the garments from Yantian to Los Angeles. (*Id.* ¶¶ 20-21.)

Based on these facts, which are uncontradicted by Plaintiff, Rex argues that its contacts with Illinois are too limited to support the exercise of personal jurisdiction. (R. 99, Mem. at 6-7.) Plaintiff disagrees, arguing that Rex's actions are sufficient to establish specific jurisdiction in Illinois under the stream-of-commerce doctrine. (R. 114, Resp. at 5-6.) Although Plaintiff does not explicitly address general jurisdiction, she does not argue—and this Court cannot discern any basis for concluding—that a company based and incorporated in Hong Kong, with no property or direct business ties to Illinois, could be deemed "at home" in Illinois. *See Purdue Research*, 338 F.3d at 787 (holding that for general jurisdiction to exist over a nonresident defendant, his or her contacts with the forum state "must be so extensive to be tantamount to [the defendant] being constructively present in the state"). Therefore, the Court proceeds to consider whether Plaintiff can establish specific jurisdiction over Rex for purposes of this case.

The exercise of specific jurisdiction over an out-of-state defendant requires that the defendant's contacts with the forum state directly relate to the challenged conduct or transaction. *Felland*, 682 F.3d at 673. Specific jurisdiction is appropriate when the defendant has purposely directed his activities at the forum state and the alleged injury arises out of the defendant's forum-related activities, as long as the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Int'l Shoe Co. vs. Washington*, 326 U.S. 310, 316 (1945). To establish the requisite minimum contacts, "not just any contacts will do: For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical*, 751 F.3d at 801 (citation and internal quotation marks omitted).

Additionally, the defendant's connections to the forum must arise out of contacts that he himself created. *Burger King*, 471 U.S. at 475. "Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement." *Advanced Tactical*, 751 F.3d at 801.

The minimum-contacts test in this case focuses on Rex's limited activity within Illinois that gave rise to this suit. Rex admits that it has "from time to time" supplied garments, such as the jackets in this case, to MMG pursuant to a contractual agreement between the parties. (R. 99-1, Ping Decl. ¶ 16.) Rex's sole contact with Illinois for purposes of this case is Macy's subsequent sale of the jackets in its Illinois stores. (R. 69, Fourth Am. Compl. ¶ 10.) Plaintiff has provided evidence that Macy's eventually sold 290 jackets in Illinois, and that the jacket was available in 21 Illinois stores. (R. 114-3, MMG's Interrog. Answers ¶¶ 2, 6.) However aside from these attenuated contacts, Rex has no apparent connection with Illinois. Ping's declaration, as described above, sufficiently establishes that Rex has no direct business or property connections with Illinois and transacts all of its business in Hong Kong and China. (R. 99-1, Ping Decl. ¶¶ 6-21.) According to the uncontradicted declaration, Rex has never even directly made a sale in Illinois, or ever contracted with any person or business in Illinois. (*Id.* ¶¶ 13-14.)

Plaintiff contends, however, that these contacts establish personal jurisdiction because Rex knowingly placed the jackets into the "stream of commerce" within the United States. (R. 114, Resp. at 2.) Plaintiff argues that this action shows Rex directed its activities at the forum enough to avail itself of its laws, making it reasonable for Rex to anticipate being haled into an Illinois court due to its products' alleged defectiveness. (R. 69, Fourth Am. Compl. ¶ 10.) Rex maintains that, even if its products were ultimately sold in Illinois, its actions do not satisfy the purposeful availment requirement that is necessary when a plaintiff proceeds under a stream-of-commerce theory. (R. 115, Reply at 3-7.) This Court agrees with Rex.

7

A foreign corporation, such as Rex, may be susceptible to suit in a forum by placing its product into the "stream of commerce." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). The stream-of-commerce doctrine evolved as a means for establishing personal jurisdiction in cases where a product traveled through an extensive chain of distribution before ultimately reaching the consumer. *Goodyear*, 131 S. Ct. at 2855. Under the doctrine, specific jurisdiction may be proper in products-liability cases where the sale of a product is not simply an "isolated occurrence," but arises "from the efforts of the manufacturer or distributor to serve . . . the market." *World-Wide Volkswagen*, 444 U.S. at 297. Such efforts make it reasonable to subject the party to suit in the targeted forum if its "allegedly defective merchandise has been the source of injury to its owner or to others." *Id.* The Supreme Court later clarified, however, that the mere placement of a good into the stream of commerce through a distributor is not sufficient to establish personal jurisdiction without the additional showing that a defendant purposefully directed its activities at the specific forum. *See J. McIntyre Machinery, LTD. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011); *see also Appjigger GmbH v. Blu Products, Inc.*, No. 14 C 9650, 2015 WL 3463413, at *4 (N.D. Ill. May 29, 2015) (observing that under *Nicastro*, "[m]erely putting goods into the stream of commerce via a distributor is insufficient, without more, to show that a defendant purposefully directed its activities to Illinois." (citation omitted)).

The parties agree that the jacket was placed into the stream of commerce in the United States. (R. 114, Resp. at 6; R. 99, Mem. at 11.) Rex sold the jacket to Macy's as part of a bulk order for over 16,000 of the same model. (R. 99-1, Ping Decl. ¶ 17.) Rex conducted the sale, manufactured the garments, and shipped them to Macy's from China. (*Id.* ¶¶ 18-19.) Rex acknowledges that Macy's then shipped the jackets from their delivery point in China to the United States for distribution. (*Id.* ¶ 20.) Plaintiff has provided evidence that Macy's

8

subsequently distributed the jackets online and in stores in the United States. (R. 114-3, MMG's Interrog. Answers ¶ 3.) Hundreds of the garments eventually reached Illinois, including the one purchased by Plaintiff. (*Id.* ¶ 2.) Plaintiff alleges that she was wearing the jacket when it caught fire, and that the manner in which the jacket was manufactured caused its rapid burning and thus her injuries.[4] (R. 60, Fourth Am. Compl. ¶¶ 21-24.) However this shows that Rex merely placed the jacket into the stream of commerce, which is not enough to satisfy minimum contacts. *See Nicastro*, 131 S. Ct. at 2788 ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."). In order for minimum contacts to exist, there must be a "substantial" connection between the defendant's conduct and the forum, not merely some connection. *Id.* ("[T]he substantial connection between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum state.") (alteration in original). Aside from knowing that the jackets were going to be sold somewhere in the United States, the evidence before the Court shows that Rex had no knowledge that they would ever reach or be sold in Illinois specifically. (R. 115, Reply, Ex. 2 at 4.) The Court finds that Rex's contacts with Illinois are not of the substantial nature sufficient to satisfy the minimum-contacts test in this case.

Plaintiff contends that the sale of Rex's garments in Illinois amounts to Rex purposefully availing itself of the forum, due to the revenues Rex generated from these sales. (R. 114, Resp. at 5-6.) Rex maintains that the ultimate placement of its garments in Illinois does not satisfy the

---

[4] There is a dispute among the parties as to whether Plaintiff was wearing the jacket when she sustained her injuries. (R. 99, Mem. at 1.) However, at this stage, the Court must resolve any factual disputes in Plaintiff's favor. *GCIU-Emp'r Ret. Fund*, 565 F.3d at 1020 n.1.

9

requirement because it never specifically directed its activities toward Illinois. (R. 115, Reply at 1.)

The general rule that an exercise of judicial authority is not lawful without a defendant's purposeful availment in the forum is applicable to products-liability cases. *See Nicastro*, 131 S. Ct. at 2787 ("[I]t is the defendant's purposeful availment that makes jurisdiction consistent with traditional notions of fair play and substantial justice." (alteration in original)). The purposeful availment requirement protects attenuated out-of-state defendants from being subjected to suit in a forum merely because their product ended up there, even if they have knowledge or awareness that the product may eventually reach the forum. *See id.* at 2788 ("[T]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum state."). In other words, the stream-of-commerce doctrine does not displace the purposeful availment requirement. *Id.* at 2785. The U.S. Supreme Court made clear in *Nicastro* that the principal inquiry in such a case is "whether the defendant's activities manifest an intention to submit to the power of the sovereign." *Id.* Thus, it is the "defendant's actions, *not his expectations*, that empower a State's courts to subject him to possible judgment." *Id.* at 2789 (emphasis added).

Rex has provided evidence that it took no part in the distribution of its garments in the United States, and that Macy's alone handled where the jackets were eventually placed. (R. 99-1, Ping Decl. ¶ 21.) In an answer to Plaintiff's interrogatories, MMG stated that neither Rex, nor any other supplier, influences where Macy's distributes or sells its products. (R. 114-3, MMG's Interrog. Answers ¶ 4.) Plaintiff has not offered any evidence to refute these assertions, yet she maintains that Rex knowingly contracting with a nationwide U.S. retailer is enough to satisfy the

10

purposeful availment requirement. (R. 114, Resp. at 4.) In support of this argument, Plaintiff offers evidence that Rex derived revenue from the contractual agreement with Macy's to supply the jackets. (*Id.*) Looking to the same contract, Plaintiff asserts that Rex knew the jackets were to be shipped to "United States Ports," (*id.*), and that Rex should have been aware that a nationwide retailer would then sell the jackets here in Illinois, (*id.* at 5). Such actions are not enough to satisfy the purposeful availment requirement, however, because they do not establish that Rex knowingly directed its activities to serve Illinois.

The jackets were delivered to MMG in China, where Rex's custody and control over them ceased. (R. 99, Mem. at 11.) Although Rex knew the jackets would end up in the United States, (*id.*), there are no facts in the record that show Rex directed any actions towards this forum enough to incur the benefits and protections of its laws. While Rex might reasonably expect that its products might be sold in any particular forum within the United States, such expectation alone is insufficient to establish the requisite contacts. *Nicastro*, 131 S. Ct. at 2788.

In support of its stream-of-commerce theory, Plaintiff relies on several past decisions of this Court. (R. 114, Resp. at 6-11.) In *Sentry Insurance Co. v. Bull HN Information Systems, Inc.*, No. 97 C 4211, 1999 WL 51801 (N.D. Ill. Jan. 29, 1999), for instance, this Court exercised personal jurisdiction over an Italian corporation that designed and manufactured a computer that caused a fire. As Plaintiff notes, the Court held in *Sentry* that if "the sale of a manufacturer . . . arises from the efforts of the manufacturer or distributor to serve directly or indirectly the market for its product in other States, it is not unreasonable to subject it to suit in one of those States." *Id.* at *3 (quoting *World-Wide Volkswagen*, 444 U.S. at 297). Plaintiff's reliance on *Sentry*, however, is unpersuasive in light of the Supreme Court's subsequent and controlling change of direction in *Nicastro*. This Court even recognized in *Sentry* that four Justices believed in a

11

stricter application of the stream-of-commerce analysis than that advanced by *World-Wide Volkswagen*, but that a majority had yet to reject its formulation. *Id.* at *2. The Supreme Court accepted this stricter approach to the stream-of-commerce doctrine in *Nicastro*, finding that a "defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant may have predicted that its goods will reach the forum State." *Nicastro*, 131 S. Ct. at 2788. The Court explicitly repudiated the stream-of-commerce test set forth in *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987), and its holding that "made foreseeability the touchstone of jurisdiction," finding this "inconsistent with the premises of lawful judicial power." *Nicastro*, 131 S. Ct. at 2788-89. Ultimately, *Nicastro* held that even if the foreign defendant manifested "an intent to serve the U.S. market," a distributor selling its goods in the forum state without more did not constitute purposeful availment of the forum's market sufficient to establish personal jurisdiction, even under the stream-of-commerce doctrine. *Id.* at 2790. The Court found that intentional torts might permit the exercise of personal jurisdiction, but explicitly held that "the general rule is applicable in this products-liability case, and the so-called 'stream-of-commerce' doctrine cannot displace it." *Id.* at 2785. As Rex's sole conduct in this case was to sell its goods to a general U.S. distributor without directing its sales or marketing its goods in any particular state, the facts are no different here and thus this Court cannot exercise personal jurisdiction over Rex.[5]

---

[5] Plaintiff argues that *Nicastro* is distinguishable, as it "confirmed that the 'stream of commerce' doctrine continues to provide a basis for personal jurisdiction" but found that personal jurisdiction was inappropriate "under the facts of that case, in that it found the record disclosed only that the subject metal shearing machine ended up in the State of New Jersey, with no record of it being sold in that state or other sales/points of contact with that state." (R. 114, Resp. at 11.) In light of *Nicastro*'s explicit repudiation of the Supreme Court's previous stream-of-commerce jurisprudence, the Court finds Plaintiff's interpretation to be an untenably narrow reading of that case.

Plaintiff cites several more cases in support of her position, but each predate *Nicastro* and rely on an outdated stream-of-commerce analysis. *See Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120 (7th Cir. 1983); *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975); *Ganzert v. Holz-Her U.S., Inc.*, No. 94 C 0529, 1994 WL 532134 (N.D. Ill. Sept. 28, 1994); *Connelly v. Uniroyal, Inc.*, 389 N.E.2d 155 (Ill. 1979). Because the facts of this case do not demonstrate that Rex purposely availed itself of Illinois's market or laws, outside of selling its goods to a nationwide U.S. distributor, the Court finds that the stream-of-commerce doctrine as set forth in *Nicastro* does not provide a sufficient basis for exercising personal jurisdiction in this case.

Even if Plaintiff could satisfy the minimum-contacts requirement, the Court still must determine whether it would offend "traditional notions of fair play and substantial justice" to exercise jurisdiction over Rex. *Int'l Shoe*, 326 U.S. at 316 (citation omitted). Factors to be considered include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Felland*, 682 F.3d at 677 (quoting *Burger King*, 471 U.S. at 477). If the defendant is a foreign party, the Court must additionally consider "the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction," because "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi*, 480 U.S. at 115 (citation omitted).

When considering the competing interests presented by this case, the Court concludes that the principles of fairness also militate against exercising personal jurisdiction over Rex. The

Court acknowledges that there are fairness principles weighing in Plaintiff's favor. Plaintiff is an Illinois resident, and should be allowed to recover fully for her injuries in a convenient forum. (R. 69, Fourth Am. Compl. ¶ 1.) The products that are the subject of this suit were bought in this state, (*id.* ¶ 17-19), and Plaintiff's injuries occurred in this state, (*id.* ¶¶ 21-24). Illinois also has a strong interest in ensuring that its citizens, like Plaintiff, are able to recover from injuries through products-liability suits. However when considering fairness factors, the "unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight" when considering whether to exercise personal jurisdiction over a foreign defendant. *Asahi*, 480 U.S. at 114. Rex would likely incur heavy costs if made to defend itself within this forum, as it is family-owned company whose witnesses and documents are all located thousands of miles away in Hong Kong or China. (R. 99-1, Ping Decl. ¶¶ 5, 22-23.)

Although the Court recognizes that Plaintiff should be able to obtain relief for her injuries in the forum of her choice, the decision not to exercise personal jurisdiction in this instance does not leave Plaintiff without any remedy. There are still other named defendants in this suit, from which Plaintiff could potentially recover in full. (R. 69, Fourth Am. Compl.) The opportunity to obtain relief from the remaining parties also ensures that the interest of Illinois in providing a right of redress to its injured citizens is satisfied. In light of the "significant weight" that should be accorded to the burden of litigation for foreign defendants, *Asahi*, 480 U.S. at 114, and the fact that Plaintiff will still have the opportunity to recover in full from other parties to this suit, the Court finds that exercising jurisdiction over Rex does not comport with principles of fundamental fairness in this case.

## CONCLUSION

For the foregoing reasons, Rex's motion to dismiss (R. 98) is GRANTED, and Rex is DISMISSED WITH PREJUDICE. Rex's motion to extend the discovery deadline (R. 116) is DENIED AS MOOT. The remaining parties are directed to appear for a status hearing on November 1, 2016, at 9:45 a.m.

ENTERED: _____
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: October 12, 2016**