# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

NORMA WALKER,                )
                             )
    Plaintiff,               )
                             )    **No. 14 C 2513**
    v.                       )
                             )    **Chief Judge Rubén Castillo**
MACY'S MERCHANDISING GROUP,  )
INC., WAL-MART STORES, INC., )
and CHARLES KOMAR & SONS, INC., )
                             )
    Defendants.              )

## MEMORANDUM OPINION AND ORDER

Norma Walker ("Plaintiff") brings this action against Wal-Mart Stores, Inc. ("Walmart"),

Charles Komar & Sons, Inc. ("Komar"), and Macy's Merchandising Group, Inc. ("Macy's")

(collectively "Defendants"), alleging strict liability, negligence, and breach of warranty claims

related to injuries she suffered when her clothing caught fire. (R. 69, Fourth Am. Compl.) Before

the Court are Defendants' motions for summary judgment as to all remaining counts against

them.[1] (R. 146, Macy's Mot. for Summ. J.; R. 150 Walmart Mot. for Summ. J.; R. 153, Komar

Mot. for Summ. J.) For the reasons stated below, the Court grants Walmart's and Komar's

motions, but grants in part and denies in part Macy's motion.

### RELEVANT FACTS

The following facts are undisputed unless otherwise stated. The litigation stems from a

Style & Co. Sport brand jacket (the "Jacket") and a Secret Treasures brand pajama top and

---

[1] Defendants represent that Plaintiff has agreed to withdraw the claims against Defendants that are not subject to the pending motions for summary judgment. (*See* R. 149, Macy's Mem. at 1 n.1; R. 150, Walmart Mot. for Summ. J. at 1; R. 153, Komar Mot. for Summ. J. at 1.) Since Plaintiff did not dispute this assertion in her response nor provide any facts or argument in support of these claims, they will be dismissed by this Court.

bottom (the "Sleepwear") that caught fire and injured Plaintiff. (R. 69, Fourth Am. Compl. ¶¶ 21-26.)

Plaintiff is an Illinois resident. (R. 161, Pl.'s Resp. to Walmart's and Komar's Joint Statement of Undisputed Material Facts [hereinafter "SOUMF"] ¶ 1.) Macy's is a New York corporation that sells, among other things, clothing, including the Jacket, which Plaintiff believes she purchased from Macy's.[2] (R. 164, Pl.'s Resp. to Macy's SOUMF ¶¶ 3, 11, 18.) Walmart is a multinational retailer that conducts business in Illinois and sold Plaintiff the Sleepwear. (R. 161, Pl.'s Resp. to Walmart's and Komar's Joint SOUMF ¶¶ 2, 9.) Komar is a New York corporation that manufactured the Sleepwear. (*Id.* ¶¶ 3, 9.)

Sometime in or before May 2008, Plaintiff's daughter purchased two sets of the same Secret Treasures brand sleepwear in different colors, which included the Sleepwear at issue in this case, and gave them to Plaintiff. (*Id.* ¶¶ 8, 12, 16-18.) The Sleepwear was made out of a blended fabric consisting of polyester and cotton. (R. 175, Walmart's and Komar's Joint Resp. to Pl.'s Statement of Additional Material Facts [hereinafter "SAMF"] ¶ 1.) From the date of purchase until January 14, 2014, Plaintiff wore the Sleepwear frequently without incident. (R. 161, Pl.'s Resp. to Walmart's and Komar's Joint SOUMF ¶ 23.)

Plaintiff believes that she purchased the Jacket at Macy's around Christmas in either 2012 or 2013, and she regularly wore the Jacket around the house when she was cold. (R. 164, Pl.'s Resp. to Macy's SOUMF ¶¶ 11, 15.) The Jacket was made of an 80% cotton and 20% polyester-blend fabric. (*Id.* ¶ 23.) Neither the Sleepwear nor the Jacket had any labels or

---

[2] Macy's maintains that Plaintiff returned the Jacket before the incident that led to Plaintiff's injuries, and therefore she was wearing another jacket at the time she was injured. (R. 164, Pl.'s Resp. to Macy's SOUMF ¶ 18 n.2.) Macy's argues, however, that this factual dispute is immaterial to its motion for summary judgment. (*Id.*)

warnings on them related to flammability. (R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶ 50; R. 172, Macy's Resp. to Pl.'s SAMF ¶ 46.)

On January 14, 2014, Plaintiff was cooking breakfast while wearing the Jacket and Sleepwear, and leaned over a lit gas stove to reach for a box of cereal. (R. 161, Pl.'s Resp. to Walmart's and Komar's Joint SOUMF ¶¶ 14, 25.) Plaintiff smelled something burning, looked down, and saw fire coming up from the bottom of the Jacket. (*Id.* ¶ 19.) The Sleepwear did not come into direct contact with the stove, but was later ignited by flames from the Jacket. (*Id.* ¶¶ 17, 25-27; R. 162, Pl.'s Mem. Opp'n to Walmart at 13.)

Plaintiff first tried to unzip the Jacket, but was unable to, so she went to her sink, grabbed a hose from the sink, and sprayed water at the flames, which eventually extinguished them. (R. 161, Pl.'s Resp. to Walmart's and Komar's Joint SOUMF ¶¶ 21-22.) Plaintiff suffered extensive, third-degree burns to approximately 40% of her body. (R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶ 4.) The Sleepwear and Jacket did not have any labels, warnings, or other information on them concerning their flammability although some women's robes and nightgowns have used fire safety warnings since the 1990s. (*Id.* ¶¶ 50, 52; R. 172, Macy's Resp. to Pl.'s SAMF ¶¶ 46, 48.)

Plaintiff's expert conducted flammability testing on the Sleepwear under a test prescribed by 16 C.F.R. § 1610, which included five tests on the Sleepwear pajama top and five tests on the Sleepwear pajama bottom. (R. 161, Pl.'s Resp. to Walmart's and Komar's Joint SOUMF ¶¶ 42-43.) Neither the Sleepwear bottom nor top ignited during any of these tests, which involved applying a flame to each garment for one second. (*Id.* ¶¶ 41-44.) The expert also conducted flammability testing under 16 C.F.R. §§ 1615-16, a regulation covering flammability standards

for children's sleepwear. (R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶¶ 30, 34.) The Sleepwear, however, ignited and failed these tests. (*Id.*)

Though the exact Jacket that Plaintiff was wearing during the incident was never located, Plaintiff's expert conducted flammability testing pursuant to the standards in 16 C.F.R. § 1610 on the same fabric from which the Jacket was made. (R. 164, Pl.'s Resp. to Macy's SOUMF ¶¶ 22, 36-37, 39.) Pursuant to that testing, the fabric ignited and burned for fifteen seconds. (*Id.* ¶ 40.) Plaintiff's expert also tested the fabric in accordance with 16 C.F.R. §§ 1615-16, and the fabric failed that test. (R. 172, Macy's Resp. to Pl.'s SAMF ¶¶ 29, 32.)

There have been no other reported incidents involving alleged burn injuries suffered by people claiming to have been wearing the same style jacket as the Jacket or any other Macy's clothing comprised of the same fabric as the Jacket. (R. 164, Pl.'s Resp. to Macy's SOUMF ¶ 49.) With respect to the Sleepwear, neither Walmart nor Komar were aware of any complaints regarding the flammability of the Sleepwear, and both have conducted flammability testing on the Sleepwear. (R. 161, Pl.'s Resp. to Walmart's and Komar's Joint SOUMF ¶¶ 32-37.)

The parties do not dispute that most adults understand that their clothing will ignite and burn if exposed to an open flame. (R. 161, Pl.'s Resp. to Walmart's and Komar's Joint SOUMF ¶ 56; *see also* R. 164, Pl.'s Resp. to Macy's SOUMF ¶¶ 53-54.) Clothing made of nylon or polyester often does not ignite and will self-extinguish or burn so slowly that it causes less injury from burns. (R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶ 46; *see also* R. 172, Macy's Resp. to Pl.'s SAMF ¶ 42.) Making the Sleepwear or Jacket out of polyester or nylon fabric would cost roughly the same as using cotton fabric. (R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶ 43; R. 172, Macy's Resp. to Pl.'s SAMF ¶ 39.)

## PROCEDURAL HISTORY

Plaintiff filed this action in the Circuit Court of Cook County, Illinois, on February 28, 2014, and Walmart later removed the action to this Court on the basis of diversity jurisdiction. (R. 1, Notice of Removal; R.1-1, State Court Compl.) On January 11, 2016, Plaintiff filed her fourth amended complaint, which is the operative pleading setting forth her claims. (*See* R. 69, Fourth Am. Compl.)

In the fourth amended complaint, Plaintiff asserts the following causes of action against Macy's, Walmart, Komar, and Rex Garments, Ltd. ("Rex"): strict products liability for defective manufacturing (Counts I, VII) and design (Counts II, VIII); strict products liability for inadequate warnings (Counts III, IX); breach of express and implied warranties (Counts IV, V, X, and XI); and negligence (Counts VI and XII). (*Id.* ¶¶ 27-130.) On July 13, 2016, the Court dismissed the strict liability claims against Walmart (Counts VII, VIII, and IX) pursuant to 735 ILL. COMP. STAT. 5/2-621, an Illinois statute that requires dismissal of strict products liability claims against a non-manufacturer if that party certifies that it is not the manufacturer of the product and names the manufacturer.[3] (R. 121, Min. Entry.) On October 12, 2016, the Court dismissed Rex from the lawsuit based on a lack of personal jurisdiction. (R. 129, Order.)

The remaining parties—Macy's, Walmart, and Komar—now move for summary judgment. (R. 146, Macy's Mot. for Summ. J.; R. 150, Walmart Mot. for Summ. J.; R. 153, Komar Mot. for Summ. J.) Komar and Walmart represent that on May 28, 2017, they advised

---

[3] *See, e.g., Lorusso v. Menard, Inc.*, No. 15-CV-7208, 2016 WL 704839, at *1 (N.D. Ill. Feb. 23, 2016) ("[The defendant] moves to dismiss pursuant to Illinois' 'seller's exception,' which requires dismissal of non-manufacturer defendants in a products liability suit if the manufacturer of the product has been identified and sued."); *Harlan v. Johnson & Johnson*, No. 15-CV-418-SMY-SCW, 2015 WL 5121408, at *2 (S.D. Ill. Aug. 31, 2015) ("[P]ursuant to 735 ILCS 5/2–621, there is an exception in products liability actions whereby any non-manufacturing defendant who has not contributed to the alleged defect is automatically entitled to dismissal[.]").

Plaintiff of the basis of their motions for summary judgment, and Plaintiff agreed to withdraw her claims against them for defective manufacturing and breach of express warranty. (R. 150, Walmart Mot. for Summ. J. at 1; R. 153, Komar Mot. for Summ. J. at 1.) Walmart and Komar, therefore, move for summary judgment on the only counts that appear to be pending against them: the breach of implied warranty and negligence claims against both Walmart and Komar, and the strict products liability claims for defective design and inadequate warnings against Komar. (R. 150, Walmart Mot. for Summ. J. at 1; R. 153, Komar Mot. for Summ. J. at 1.)

Walmart argues that the Court should grant summary judgment against Plaintiff's breach of implied warranty claims because the Sleepwear was not unreasonably dangerous or unfit for its ordinary purpose of "wearing while sleeping or lounging at home." (R. 152, Walmart Mem. at 2, 3-5.) Walmart also contends that the Court should grant summary judgment on Plaintiff's negligence claims because Walmart had no duty to sell fireproof or 100% polyester or nylon adult sleepwear, and because the Sleepwear did not proximately cause Plaintiff's injuries. (*Id.* at 2, 6-8.) Walmart argues that it was the Jacket, not the Sleepwear, that first caught fire and caused Plaintiff's injuries. (*Id.* at 6-8.) Walmart claims that it satisfied its duty of care because the Sleepwear "passed the only federal flammability standard applicable, 16 [C.F.R. §] 1610." (*Id.* at 7.) Komar advances the same arguments as Walmart for summary judgment on Plaintiff's breach of implied warranty and negligence claims. (R. 155, Komar Mem. at 2-3, 12-15.)

Komar also maintains that the Court should grant summary judgment on Plaintiff's strict products liability claim for defective design because the Sleepwear was not unreasonably dangerous beyond the extent contemplated by an ordinary consumer, and because the utility of cotton or cotton-blend sleepwear outweighs any risk that it will catch fire and injure the person wearing it. (*Id.* at 4-10.) Komar argues that Plaintiff's strict products liability claim for

inadequate warnings should suffer a similar fate, because Komar did not have a duty to warn Plaintiff of the Sleepwear's flammability, and, even if Komar did have a duty to warn, Plaintiff fails to advance any evidence that a warning on the Sleepwear would have prevented her injuries. (*Id.* at 11-12.)

Plaintiff contends that Walmart's and Komar's arguments miss the mark, because this case concerns not only the aspects of the Sleepwear's design that caused it to ignite, but also aspects of the design that caused the Sleepwear to ignite so easily and produce the fire's intensity and rapid spread. (R. 162, Pl.'s Mem. Opp'n to Walmart at 1-2; *see also* R. 163, Pl.'s Mem. Opp'n to Komar at 1-2.) Plaintiff also argues that Walmart's and Komar's reliance on federal regulations, including 16 C.F.R. § 1610, is not dispositive; rather, compliance with those regulations is nothing more than evidence that a jury may consider in its determination as to whether the Sleepwear is defective or Defendants were negligent. (R. 162, Pl.'s Mem. Opp'n to Walmart at 2; *see also* R. 163, Pl.'s Mem. Opp'n to Komar at 2.)

Macy's, like Walmart and Komar, represents that Plaintiff agreed to withdraw the breach of express warranty and strict liability for defective manufacturing claims against it. (R. 149, Macy's Mem. at 1 n.1.) Therefore, like Komar, Macy's does not address those claims and moves for summary judgment only on Plaintiff's strict liability claims for defective design and inadequate warnings, as well as Plaintiff's breach of implied warranty and negligence claims. (*See id.* at 1.) Macy's arguments for summary judgment on the strict liability claims are nearly the same as Komar's, namely, that: the Jacket complied with 16 C.F.R. § 1610; the Jacket was not defectively designed under a consumer-expectation or risk-utility analysis; Macy's had no duty to warn Plaintiff of the Jacket's flammability; and, even if Macy's had a duty to warn, a warning or label on the Jacket would not have prevented Plaintiff's injuries. (*See id.* at 2-14.)

As to Plaintiff's negligence claims, Macy's argues that it did not deviate from any standard of care that other manufacturers followed at the time the Jacket was designed, and that Plaintiff has not put forth any evidence that Macy's knew or should have known that the Jacket was unreasonably dangerous. (*See id.* at 15-16.) Macy also contends that it properly tested the Jacket, had no duty to warn Plaintiff about the Jacket's flammability, used safe fabrics for the Jacket, and lacked any duty to conduct surveillance on the Jacket after Macy's sold it to Plaintiff. (*Id.* at 16-17.) Macy's asserts that, as a result, the Court should grant summary judgment against Plaintiff on any negligence claims based on these theories. (*Id.*) Finally, Macy's argues that it did not breach any implied warranty of merchantability or fitness for a particular purpose because the Jacket was fit for Plaintiff to wear as clothing in the ordinary course of her life. (*Id.* at 18-20.)

In response, Plaintiff argues that, like Walmart and Komar, Macy's fails to address characteristics of the Jacket's design that caused the fire's ease of ignition, intensity, and rapid spread, and that Macy's compliance with federal regulations, including 16 C.F.R. § 1610, cannot provide grounds for granting summary judgment in Macy's favor. (R. 165, Pl.'s Mem. Opp'n to Macy's at 1-2.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks omitted). In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015) (citation omitted).

Under Rule 56, the movant has the initial burden of establishing that a trial is not necessary. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). "That burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* (citation and internal quotation marks omitted). If the movant carries this burden, the nonmovant "must make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (citation and internal quotation marks omitted). The nonmovant "must go beyond the pleadings (*e.g.,* produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [their] favor." *Id.* (alteration in original) (citation and internal quotation marks omitted). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "[S]peculation and conjecture" also cannot defeat a motion for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

In deciding the motions, the Court cannot weigh conflicting evidence, assess the credibility of the witnesses, or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Omnicare, Inc. v.*

*UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011). Instead, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson*, 477 U.S. at 249).

## ANALYSIS

### I.    Use of Expert Testimony to Defeat Summary Judgment

As a preliminary matter, Defendants object to Plaintiff's use of expert testimony to oppose summary judgment. (*See, e.g.*, R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶¶ 5, 7-11, 16, 20, 23-24, 31, 40, 42, 48-49, 51-52, 59; R. 172, Macy's Resp. to Pl.'s SAMF at 1-3.)[4] Plaintiff may use expert affidavits to oppose summary judgment, provided that the expert testimony is admissible and the expert affidavits set forth facts and "a process of reasoning leading to the expert's conclusion." *Berg for Wiesner v. CI Invs., Inc.*, No. 15 C 11534, 2017 WL 1304082, at *5 (N.D. Ill. Apr. 7, 2017) (citation omitted); *see also Rodefer v. Hill's Pet Nutrition, Inc.*, No. IP 01-123-C H/K, 2003 WL 23096486, at *1 (S.D. Ind. Nov. 7, 2003) ("Where expert opinions are employed to oppose summary judgment, the proffered opinions must be admissible or usable at trial." (internal quotation marks omitted)). For example, an expert affidavit will not provide a basis to defeat summary judgment if the expert fails to identify "any specific facts," source materials relied upon, or "steps" in her reasoning that led her to her conclusions. *Berg*, 2017 WL 1304082, at *5.

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)[.]" *Brown v. Burlington N. Santa Fe*

---

[4] Defendants have not filed any motions to formally exclude expert testimony, but instead have responded to Plaintiff's factual assertions by objecting to any assertions based on expert testimony. Many of Defendants' objections to expert testimony are based on, among other rules, Federal Rule of Evidence 702. (*E.g.*, R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶¶ 9-10.)

*Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014). "The rubric for evaluating the admissibility of expert evidence considers whether the expert was qualified, whether his methodology was scientifically reliable, and whether the testimony would have assisted the trier of fact in understanding the evidence or in determining the fact in issue." *Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 817 (7th Cir. 2014).

"A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). "If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.' " *Id.* (quoting *Daubert*, 509 U.S. at 596). The Court is given "wide latitude in performing its gatekeeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable." *Id.* (citation omitted); *see also C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834-35 (7th Cir. 2015) (ruling that the "district court is the gatekeeper of expert testimony" and that an expert's "reliability is determined on a case-by-case basis"). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Walmart and Komar do not challenge any expert testimony based on the qualifications of Plaintiff's expert witnesses, but instead focus on the reliability of their methodologies, and whether portions of their testimony are relevant to Defendants' motions for summary judgment. (*See* R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶¶ 7, 9-11, 20, 33-36, 40, 42, 48-49, 51-52 (challenging expert testimony as "irrelevant," "speculative," "without foundation,"

"not the product of reliable principles or methods," or not supported by citations to scientific evidence, facts, or data); R. 172, Macy's Resp. to Pl.'s SAMF ¶¶ 10-11, 24, 27, 31-32, 36, 38, 44, 48.) "*Daubert* sets forth a non-exhaustive list of guideposts to consult in assessing the reliability of expert testimony: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the relevant scientific, technical, or professional community." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010). "Trained experts commonly extrapolate from existing data," and therefore, "[t]he critical inquiry is whether there is a connection between the data employed and the opinion offered; it is the opinion connected to existing data only by the *ipse dixit* of the expert . . . that is properly excluded under Rule 702." *Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 806 (7th Cir. 2013) (internal citation and quotation marks omitted). "An expert's testimony is not unreliable simply because it is founded on his experience rather than on data[.]" *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). Rule 702, requires, however, "that the expert explain the 'methodologies and principles' that support his opinion; he cannot simply assert a 'bottom line.' " *Id.* (citation omitted).

### A. Steven Spivak's Expert Opinion

Plaintiff engaged Stephen Spivak to opine on the Jacket's and Sleepwear's safety with respect to flammability. (R. 161-3, Spivak Report ¶ 117; R. 161, Pl.'s Resp. to Walmart's and Komar's Joint SOUMF ¶ 48.) As relevant to Defendants' motions for summary judgment, Defendants object to Spivak's opinions that: (1) the fabrics used to make the Sleepwear and Jacket are made of materials that promote easy ignition, rapid, intense burning, and rapid flame spread, (R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶ 42; R. 172, Macy's Resp.

to Pl.'s SAMF ¶ 38); (2) several thousands of injuries have occurred as the result of clothing catching fire, (R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶¶ 10-11; R. 172, Macy's Resp. to Pl.'s SAMF ¶¶ 10-11); (3) the standards of flammability and testing for flammability set forth in 16 C.F.R. § 1610 are insufficient to protect against fire risks related to clothing, (R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶¶ 20; R. 172, Macy's Resp. to Pl.'s SAMF ¶ 24); (4) had the Jacket and Sleepwear been made of either nylon or polyester, there would have been little or no ignition, and any fire would have burned more slowly and been more easily extinguished resulting in little or no injury to Plaintiff, (R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶ 48; R. 172, Macy's Resp. to Pl.'s SAMF ¶ 44); and (5) the public generally knows that their clothing will ignite, but does not know or appreciate the ease of ignition, rapid flame spread and engulfing fire that can result from the ignition of cotton-polyester blend clothing, (R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶ 51).

The Court concludes that the first four opinions are relevant to the present motions for summary judgment, as they are relevant to the broad considerations the Court must weigh in its analysis under the risk-utility test, which requires the Court to weigh the following factors in assessing a defective-design claim: "(1) the availability and feasibility of alternate designs at the time of the product's manufacture; or (2) that the design used did not conform to the design standards in the industry, design guidelines provided by an authoritative voluntary organization, or design criteria set by legislation or governmental regulation." *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1154 (Ill. 2011). The last opinion to which Defendants object, that the public does not appreciate the dangers of cotton-polyester blend clothing, is also relevant to this case because the Court, for purposes of Plaintiff's strict liability claims, must analyze whether the

13

Jacket and Sleepwear are unreasonably dangerous because they "failed to perform as an ordinary consumer would expect." *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 256 (Ill. 2007). All of these opinions will also assist a trier of fact in understanding safety standards affecting the clothing industry, as well as the scientific basis for any industry standards or clothing designs that are aimed to protect against flammability. *See Hartman*, 758 F.3d at 817 (noting that the *Daubert* inquiry includes "whether the testimony would have assisted the trier of fact in understanding the evidence or in determining the fact in issue").

The Court also finds that Spivak's opinions satisfy Rule 702's requirements for reliability. Spivak has decades of experience in the fire protection engineering field and has published numerous articles on the subject, many of which have been published in peer-reviewed, scientific journals. (R. 161-3, Spivak Aff. ¶¶ 6-14.) His expert opinions are based on methods that have been tested and subjected to peer review and publication, and the record is lacking of any indication that Spivak's methodology is not generally accepted in the relevant scientific, technical, or professional community. *See Allen*, 600 F.3d at 817; *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) ("The focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate.").

Spivak's opinion concerning the fabrics that make the Sleepwear and Jacket unsafe and his opinion that the 16 C.F.R. § 1610 standard is insufficient to protect against fire risks, are based on research, testing, and his industry experience. (*See* R. 161-3, Spivak Aff. ¶¶ 29-77.) So too is his opinion that, had the Jacket and Sleepwear been made of either nylon or polyester, there would have been little or no ignition, and any fire would have burned more slowly and would have been easier to extinguish, resulting in little or no injury to Plaintiff. (*See* R. 161-3, Spivak Report ¶ 49 ("This result for all polyester and all nylon garments is substantiated by my

peer reviewed published research on alternative testing of women's sleepwear and night dresses.").)

Finally, his opinions that thousands of injuries have occurred from clothing catching fire, and that the public generally does not know or appreciate the ease of ignition, rapid flame spread, and engulfing fire that can result from the ignition of cotton-polyester blend clothing, are supported by research and experience. (*E.g.*, *id.* ¶¶ 37, 64 100; *see also* R. 148-5, Spivak Dep. Tr. at 100.) Defendants disagree with Spivak's conclusions and point out that other organizations might also disagree with Spivak's conclusions, (R. 174, Komar's Reply at 1-2), but an "expert may provide expert testimony based on a valid and properly applied methodology and still offer a conclusion that is subject to doubt." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013). "It is the role of the jury to weigh these sources of doubt." *Id.* Therefore, the Court will consider the portions of Spivak's testimony referenced above in determining whether summary judgment is appropriate.

## B. Kenneth Diller's Expert Opinion

Plaintiff also engaged Kenneth Diller to offer expert opinion on the cause of Plaintiff's injuries. (R. 164-4, Diller Aff. ¶ 2; R. 161, Pl.'s Resp. to Walmart's and Komar's Joint SOUMF ¶ 49.) Defendants object to Diller's opinion that once the Jacket and Sleepwear ignited, they burned at a rate and intensity that injured Plaintiff without affording her an opportunity to stop the burning. (R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶ 40; R. 172, Macy's Resp. to Pl.'s SAMF ¶ 36.) Defendants argue that this opinion is speculative and "without foundation." (R. 175, Walmart's and Komar's Joint Resp. to Pl.'s SAMF ¶ 40.)

The Court finds that Plaintiff may use Diller's testimony to oppose summary judgment. Diller has over 45 years of professional experience in biomedical engineering and specializes in

the area of burn injuries. (R. 161-4, Diller Aff. ¶¶ 11-12.) He has published over 280 research papers in medical, scientific, and engineering journals. (*Id.* ¶ 7.) His opinion is based upon his broad experience and research. (*Id.* ¶ 4.) His report uses mathematical formulas from other scientific research and data from testing conducted by Plaintiff's flammability testing expert, Elizabeth Buc, to conclude that ten seconds of exposure to fire produced from cotton-polyester clothing would cause nearly complete necrosis, or death, of Plaintiff's skin tissue. (R. 161-4, Diller Report at 5.) Because Buc's experiments showed that the Sleepwear and Jacket were on fire for 13 seconds or more, Diller concludes that the fire caused Plaintiff's injuries. (*Id.* at 4-6.) To support his opinion, Diller also points to research finding that ignition of one's clothing occurs before that person feels pain. (*Id.* at 4.) The Court, therefore, permits Plaintiff to oppose summary judgment using Diller's affidavit because it provides enough research, facts, and a process of reasoning leading to Diller's conclusion that Plaintiff would have suffered third degree burns or serious injury without having an opportunity to extinguish the fire. *See Berg*, 2017 WL 1304082, at *5. Nor is there any doubt at this stage in the litigation that Diller's methodologies have been tested, subjected to peer review and publication, and accepted in the relevant scientific, technical, or professional community. *See Allen*, 600 F.3d at 817. Thus, the Court will consider Diller's relevant opinions in its analysis.

## II.     Strict Products Liability

The Court now turns to the strict liability claims against, Macy's, Walmart, and Komar. "Under Illinois law, the elements of a claim of strict liability based on a defect in the product are: (1) a condition of the product as a result of manufacturing or design, (2) that made the product unreasonably dangerous, (3) and that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff, (5) that was proximately caused by the condition." *Mikolajczyk*

*v. Ford Motor Co.*, 901 N.E.2d 329, 345 (Ill. 2008), *opinion modified on denial of reh'g* (Dec.

18, 2008); *see also Show v. Ford Motor Co.*, 697 F. Supp. 2d 975, 980 (N.D. Ill. 2010) (reciting

the same elements for a strict liability claim based on a product defect), *aff'd*, 659 F.3d 584 (7th

Cir. 2011). "A product may be found to be unreasonably dangerous based on proof of any one of

three conditions: a physical defect in the product itself, a defect in the product's design, or a

failure of the manufacturer to warn of the danger or to instruct on the proper use of the product."

*Mikolajczyk*, 901 N.E.2d at 335.

Plaintiff brings strict liability claims against Macy's and Komar based on theories of

defective design and inadequate warnings, and Macy's and Komar move for summary judgment

on those claims. (R. 149, Macy's Mem. at 1; R. 153, Komar Mot. for Summ. J. at 1.) The Court

concludes that Plaintiff's strict liability claims against Komar fail for lack of proximate cause.[5]

"Under both strict liability and negligence, a proximate cause is one that produces an injury

through a natural and continuous sequence of events unbroken by any effective intervening

cause." *Kleen v. Homak Mfg. Co.*, 749 N.E.2d 26, 29 (Ill. App. Ct. 2001). "While proximate

cause is ordinarily a question for the trier of fact, it becomes a question of law where there is no

material issue of fact regarding the matter or only one conclusion is clearly evident." *Id.*

---

[5] While Komar and Walmart explicitly raise this argument as grounds for summary judgment on
Plaintiff's negligence claims, the argument applies equally to Plaintiff's strict liability claims, and
Plaintiff has specifically addressed the issue of proximate cause with respect to the injuries caused by the
Sleepwear in response to Komar's and Walmart's motions for summary judgment. *See Kleen v. Homak
Mfg. Co.*, 749 N.E.2d 26, 29 (Ill. App. Ct. 2001) (observing that the proximate cause analysis as to strict
liability and negligence are the same). Additionally, Komar and Walmart argue throughout their motion
that they cannot be held liable because the Sleepwear was ignited by the Jacket and not an open flame on
the stove, which is essentially an argument that the Sleepwear was not a proximate cause of Plaintiff's
injuries. (R. 155, Komar Mem. at 6, 13 ("[T]here is no evidence to suggest that anything about the
garment's propensity to ignite when pressed against an already-ignited garment is unreasonable[.]"), 14-
15; R. 152 Walmart Mem. at 5 ("Walmart incorporates the arguments from Komar's Motion for
Summary Judgment as relevant here[.]"), 7-8.)

Proximate cause encompasses two requirements: cause-in-fact and legal cause. *Malen v. MTD Prod., Inc.*, 628 F.3d 296, 309 (7th Cir. 2010). For cause-in-fact, the Court must ask "whether the injury would have occurred absent the defendant's conduct." *Young v. Bryco Arms*, 821 N.E.2d 1078, 1085 (Ill. 2004). "[W]hen multiple factors may have combined to cause the injury, [the Court must] consider whether the defendant's conduct was a material element and a substantial factor in bringing about the injury." *Coole v. Cent. Area Recycling*, 893 N.E.2d 303, 310 (Ill. App. Ct. 2008) (citation and internal quotation marks omitted). "[I]f a plaintiff relies upon circumstantial evidence" to show cause in fact, "that evidence must be of such a nature and so related as to make the conclusion of causation more probable as opposed to merely possible." *Baez v. Target Corp.*, 80 F. Supp. 3d 862, 868 (N.D. Ill. 2015).

To establish legal cause, Plaintiff must show that "the ultimate injury was reasonably foreseeable," which "is satisfied by proof that a reasonable person could foresee that his conduct could lead to the injury complained of." *Rivera v. Garcia*, 927 N.E.2d 1235, 1242 (Ill. 2010). "Additionally, where injury is caused by the concurrent negligence of two persons and the accident would not have occurred without the negligence of both, the negligence of each is a proximate cause of the injury." *Id.* "Proximate cause is not established, however, where the causal connection is contingent, speculative or merely possible." *Mengelson v. Ingalls Health Ventures*, 751 N.E.2d 91, 96 (Ill. App. Ct. 2001) (citation and internal quotation marks omitted)).

Plaintiff has not presented any evidence that the Sleepwear, as opposed to the Jacket, was the legal cause of her injuries. Plaintiff's only argument is that the Sleepwear caused her injuries because it "increased the available fuel load with a material known to burn at an accelerated rate and temperature making the fire more difficult to extinguish, with a vertical flame spread rate *faster* than that of the Macy's jacket." (R. 163, Pl.'s Mem. Opp'n to Komar at 15 (emphasis in

original).) The mere fact that a material has a dangerous or defective condition, however, is not evidence of causation that creates a genuine issue of material fact. *Vertin v. Mau*, 8 N.E.3d 658, 662 (Ill. App. Ct. 2014) ("The possibility that an unreasonably dangerous condition in the shower stall had caused him to fall was insufficient to establish a causal relationship between [the defendant's] alleged negligence and [the plaintiff's] injuries."). Plaintiff must put forth some evidence showing that it was reasonably foreseeable that the Sleepwear would ignite after coming into contact with another article of clothing that was on fire.

Plaintiff concedes that the Sleepwear was not ignited by the stove, but by the Jacket. (R. 162, Pl.'s Mem. Opp'n to Walmart at 13.) Plaintiff's experts do not opine that it was foreseeable that another article of clothing set aflame could, in turn, set fire to the Sleepwear and injure Plaintiff. Only Spivak opines on the foreseeability of the incident that led to Plaintiff's injuries, and he posits that "foreseeable behaviors such as cooking and garment use around kitchen ranges are well known for decades." (R. 161-3, Spivak Report at 4-5.) Any injury caused by the Sleepwear, however, was not the result of cooking or coming into contact with a flame from kitchen appliances; rather, it was the result of another garment being set on fire. (R. 161, Pl.'s Resp. to Walmart's and Komar's Joint SOUMF ¶¶ 17, 25-27.) Plaintiff does not put forth any evidence showing that a reasonable person could foresee that another article of clothing would set fire to the Sleepwear, as opposed to the foreseeability of the Sleepwear or other clothing being set on fire by an open flame on a stove.

Additionally, under Illinois law, if the tortious conduct "charged does nothing more than furnish a condition by . . . which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury." *Abrams v. City of Chicago*, 811 N.E.2d 670, 675 (Ill. 2004). The

19

record before the Court would only allow a reasonable jury to conclude that the Sleepwear's allegedly dangerous flammability properties merely furnished a condition by which Plaintiff's injury was made possible, and that the Sleepwear injured Plaintiff because of Macy's independent act of, according to Plaintiff, designing a Jacket that was too easily ignited, resulting in an intense and rapid-spreading fire. There is no evidence, direct or circumstantial, that any reasonable person could foresee that other clothing worn on top of the Sleepwear would be unusually flammable and combine with the Sleepwear to cause Plaintiff's injuries. Thus, Plaintiff has failed to create an issue of fact as to proximate cause, and the Court will grant summary judgment for Komar on Plaintiff's strict liability claims.[6] *See Jinkins v. Evangelical Hosps. Corp.*, 783 N.E.2d 123, 129 (Ill. App. Ct. 2002) ("The element of proximate cause is ordinarily a question of fact for the jury; however, summary judgment is appropriate where the facts are undisputed and there is no difference in the judgment of reasonable [persons] as to the inferences to be drawn.").

The only strict liability claims that remain, then, are those against Macy's. The Court addresses Plaintiff's defective design and inadequate warning claims against Macy's separately below.

## A. Defective Design

Macy's argues that summary judgment is proper on Plaintiff's strict liability, design-defect claims because Plaintiff has not put forth evidence showing that the Jacket is unreasonably dangerous based on the expectations of an ordinary consumer or an analysis of the Jacket's risk

---

[6] Because Macy's, unlike Komar, does not present any argument in support of summary judgment based on a lack of proximate cause, the Court declines to consider this issue as to the strict liability claims against Macy's. *United States v. King-Vassel*, 728 F.3d 707, 711-12 (7th Cir. 2013) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision.").

weighed against its utility. (*See* R. 149, Macy's Mem. at 2-12.) Thus, the Court addresses whether there is any genuine issue of material fact as to whether the Jacket was unreasonably dangerous by virtue of a defective design.

In a design-defect case, "[t]o establish that a product is unreasonably dangerous, and thus defective, a plaintiff may proceed under two alternative methods of proof, known as the 'consumer-expectation test' and the 'risk-utility test.' " *Show*, 697 F. Supp. 2d at 980; *see also Mikolajczyk*, 901 N.E.2d 329, 360 ("[B]oth the consumer-expectation test and the risk-utility test may be utilized in a strict liability design defect case to prove that the product is 'unreasonably dangerous.' "). "Where the two tests yield conflicting results . . . the risk-utility test 'trumps,' and the product is deemed not unreasonably dangerous, (notwithstanding consumers' expectations that the product would be safer)." *Ferraro v. Hewlett-Packard Co.*, 721 F.3d 842, 848 (7th Cir. 2013). "When both tests are employed, consumer expectation is to be treated as one factor in the multifactor risk-utility analysis." *Mikolajczyk*, 901 N.E.2d at 360; *see also Schuring v. Cottrell, Inc.*, 244 F. Supp. 3d 721, 733 (N.D. Ill. 2017) ("[T]he consumer-expectation perspective provides but one factor among many that can be considered within the risk-utility test, and alone can form the basis of proof or theory for a case."). "Each party is entitled to choose its own method of proof, to present relevant evidence, and to request a corresponding jury instruction." *Mikolajczyk*, 901 N.E.2d at 352-53. "If the evidence is sufficient to implicate the risk-utility test, the broader test, which incorporates the factor of consumer expectations, is to be applied by the finder of fact." *Id.* at 253. Additionally, "[w]hether a product is defective is ordinarily a question of fact for the jury to decide." *Dolin v. SmithKline Beecham Corp.*, 62 F. Supp. 3d 705, 720 (N.D. Ill. 2014).

Because this case is at the summary judgment stage and the parties have not definitively chosen whether they will proceed at trial under a consumer-expectation or risk-utility theory of design defect, the Court will analyze Plaintiff's strict liability claims under both theories.[7] If the evidence at trial implicates both theories, then the Court will instruct the jury to analyze Plaintiff's design-defect claims under the risk-utility test, with consumer expectations treated as one factor in the multifactor risk-utility analysis. *See Mikolajczyk*, 901 N.E.2d at 352-53, 355-56 (observing that parties may proceed at trial under either the consumer-expectation or risk-utility test to prove a design defect or absence thereof); *see also Show*, 697 F. Supp. 2d at 981-82 ("If Defendant were to offer evidence *at trial* implicating the risk-utility test, then a combined jury instruction would be given. . . . However, at this stage of the litigation, and for the purposes of this motion, the Court will focus on whether Plaintiffs can make a prima facie case of strict liability under the consumer-expectation test." (emphasis added)).

### 1. Consumer-Expectation Test

Under the consumer-expectation test, a plaintiff may prove that a product's design was unreasonably dangerous by way of evidence that "the product failed to perform as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Calles*, 864 N.E.2d at 256. "This is an objective standard based on the average, normal, or ordinary expectations of the reasonable person; it is not dependent upon the subjective expectation of a particular consumer or user." *Id.* The "ordinary consumer" under this test is the customary or typical user or purchaser of the product. *Id.* at 257. "No evidence of ordinary consumer

---

[7] The Court notes that Plaintiff's negligence claims also require the Court to conduct the risk-utility analysis in this case. *Jablonski*, 955 N.E.2d at 1154 ("[R]isk-utility balancing remains operative in determining whether a defendant's conduct is reasonable in a negligent-design case.").

expectations is required, because the members of the jury may rely on their own experiences to determine what an ordinary consumer would expect." *Mikolajczyk*, 901 N.E.2d at 352; *see also Hale v. Bayer Corp.*, No. 15-CV-00745-JPG-SCW, 2017 WL 1425944, at *11 (S.D. Ill. Apr. 21, 2017) (observing that expert testimony is not required to satisfy the consumer-expectation test, and "assuming that the jury may rely on their own experiences to determine what an ordinary consumer would expect"); *Hill v. Brass Eagle, Inc.*, No. 15 C 368, 2016 WL 4505170, at *8 (N.D. Ill. Aug. 29, 2016) ("The plaintiff need not present evidence of ordinary consumer expectations, because members of the jury may rely on their own experiences to determine what an ordinary consumer would expect." (citation and internal quotation marks omitted)).[8] Additionally, expert testimony concerning what an ordinary consumer expects of a product can create a genuine issue of material fact sufficient to defeat summary judgment. *See Newman by Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 7217197, at *12 (N.D. Ill. Mar. 29, 2013) (denying motion for summary judgment because Plaintiff's expert testified that the ordinary consumer assumes over-the-counter drugs are safe based on their availability without a prescription).

Plaintiff argues that the ordinary consumer would not appreciate that the Jacket was made of fabrics that rendered it more combustible and dangerous than jackets made of other materials. (R. 163, Pl.'s Mem. Opp'n to Komar at 1-2, 7.) Plaintiff has produced expert testimony supporting this argument. (*See* R. 161-3, Spivak Aff. ¶ 94; R. 161-3, Spivak Report ¶¶ 37, 64 100.) Plaintiff has also produced evidence showing that the Jacket ignited quickly and burned

---

[8] The Court notes that state law governs what evidence is required to prove a case. *See Poulter v. Cottrell, Inc.*, No. 12-CV-1071, 2016 WL 7451630, at *2 (N.D. Ill. Dec. 28, 2016) ("In light of the Seventh Circuit's history of accepting state law as controlling questions of what evidence is required to prove a case and the underlying principles of diversity jurisdiction, the Court finds that it is to state law . . . that it must turn to determine whether a plaintiff must present an expert's testimony on whether a product's design is defective.").

rapidly and intensely, and that it was foreseeable that the Jacket might catch fire as a result of one's ordinary use of the Jacket near open flames in the kitchen. (R. 161-2, Buc Aff. ¶¶ 27, 32 (noting that, in flammability testing, the Jacket ignited in three seconds and spread flames ten inches in seven seconds); R. 161-3, Spivak Aff. ¶¶ 33-34.) This evidence creates a genuine issue of material fact as to whether the Jacket performed as an ordinary consumer would expect when exposed to or placed near a flame in the kitchen while cooking, which a reasonable jury could find is foreseeable and within the ordinary use of the Jacket. *See Calles*, 864 N.E.2d at 257 (ruling that child's use of a lighter was reasonably foreseeable because an ordinary consumer would expect that a child could take a lighter and try to use it).[9]

Macy's argues that Plaintiff had knowledge that the Jacket would catch fire if exposed to an open flame, and that an ordinary consumer would likewise expect the Jacket to catch fire if exposed to an open flame. (R. 149, Macy's Mem. at 3-6.) Therefore, Macy's maintains there was nothing unexpected about the way the Jacket performed. (*Id.*) The question under the consumer-expectation test in this case, however, is not whether the Jacket could catch fire, a danger that Plaintiff agrees is generally well-known, (164, Resp. to Macy's SOUMF ¶ 53), but whether an ordinary consumer would expect that the Jacket would *so easily* catch fire and result in a type of burning that would almost guarantee serious injuries. (R. 165, Pl.'s Mem. Opp'n to Macy's at 1-

---

[9] *See also Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 740 (6th Cir. 2000) ("[Plaintiff]'s demonstration that the shirt would burn quickly and intensely, coupled with the CPSC's report on hospitalization from clothing burns, creates a question of fact for the jury on the issues of severity and foreseeability"); *Shouey ex rel. Litz v. Duck Head Apparel Co.*, 49 F. Supp. 2d 413, 418 (M.D. Pa. 1999) (observing that the fact that garments undergo flammability testing pursuant to federal law suggests it is foreseeable that clothing may catch fire during the course of routine, day-to-day activities and therefore also suggests "the manufacturer owes a duty to the user to provide a product that does not burn unreasonably quickly or in some other especially harmful manner, as by generating extraordinary heat or by melting"); *Ellsworth v. Sherne Lingerie, Inc.*, 495 A.2d 348, 357 (Md. 1985) (ruling that it was "reasonably foreseeable as a matter of law" that "a loosely fitting gown will come into contact with sources of ignition in the environment where it may be expected to be worn, and particularly when worn in the kitchen and near a stove.").

2; *see also* R. 148-4, Macy's 30(b)(6) Dep. Tr. at 94:5-10 (stating that clothing flammability safety standards consider "burn times and what someone may do if their clothing did catch on fire giving them enough time to either take it off or stop, drop, and roll, whatever the case may be").) Plaintiff has advanced evidence showing that the ordinary consumer would not be aware of the Jacket's claimed danger to more easily provoke an intense, rapid-spreading fire that is difficult to extinguish when coming into contact or close contact with a stove, a foreseeable use, (R. 161-3, Spivak Aff. ¶¶ 33-34, 94; R. 161-3, Spivak Report ¶¶ 37, 64 100; R. 161-4, Diller Aff. ¶ 29.) Thus, there is a genuine dispute of fact concerning the ordinary consumer's expectations of the Jacket, "and a jury is uniquely equipped to decide such an issue." *Newman*, 2013 WL 7217197, at *12; *see also McDaniel v. Trail King Indus., Inc.*, 248 F. Supp. 2d 749, 755 (N.D. Ill. 2002) (denying summary judgment where there was a genuine dispute over whether a ladder performed in a manner the ordinary consumer would have expected).

In addition, unlike the authority Macy's relies upon, Plaintiff has presented evidence that consumers would not know about the Jacket's ease of ignition and burning characteristics, and that these characteristics make the Jacket more dangerous than jackets made from other fabrics,[10] implicating scientific principles related to flammability that ordinary consumers do not appreciate. *Cf. Simien v. S. S. Kresge Co.*, 566 F.2d 551, 558 (5th Cir. 1978) (reversing jury verdict in favor of the plaintiff because "[n]o comparative analysis was made of the difficulty of

---

[10] (*See, e.g.*, R. 148-5, Spivak Dep. Tr. at 118 (opining that he proposes eliminating only some cotton-blend fabrics that are "full cover, wide, loose and flowing" from the marketplace), 126-27 (opining that not all cotton-blend clothing is unreasonably dangerous, and that "[i]f you were wearing a pair of cotton/polyester leotards, the likelihood of ignition, given the propensity of the garment, the fit of the fabric, it's very low risk, very low likelihood."); R. 161-2, Buc Aff. ¶ 34 ("Heavier weight garments are more difficult to ignite than light weight garments. Synthetic fabrics like nylon and polyester melt away from open flames. Silk self-extinguishes. Tight-fitting garments are harder to ignite[.]"); R. 161-3, Spivak Report ¶ 64 (opining that the clothing at issue "combines easily ignitable cotton blend fabrics, plus a resultant scaffolding effect contributed by the combination of a charring component cotton fiber plus a melting component polyester fiber; intimately blended together in yarn and fabric").)

ignition plus the rate and intensity of combustion of this fabric vis-a-vis wool, cotton, or other synthetic materials normally used in clothing" and because the defendant presented uncontroverted evidence showing that the fabric at issue was "slow-burning and virtually impossible to ignite"); *Fanning v. LeMay*, 230 N.E.2d 182, 184 (Ill. 1967) (dismissing product liability claims because there were no allegations setting forth how the shoes at issue were different from "shoes ordinarily worn by millions of other people" and because it is "common knowledge that shoes are more likely to slip when wet than when dry"); *Golden v. Marshall Field & Co.*, 479 N.E.2d 1211, 1213 (Ill. App. Ct. 1985) ("We do not believe that plaintiff's allegation in her complaint, without more, that the pantyhose were 'unusually slippery' creates a factual issue.").

Next, Macy's contends that Plaintiff cannot argue that the Jacket failed to perform as expected because she had no preconceived notions or expectations about the Jacket's fabric. (R. 149, Macy's Mem. at 4.) Plaintiff, however, disputes this factual assertion and creates an issue of fact on this point. (R. 164, Pl.'s Resp. to Macy's SOUMF ¶ 14.) Additionally, the Court notes that Plaintiff's subjective notions or expectations are not relevant under the consumer-expectation test, which looks only to the "average, normal, or ordinary expectations of the reasonable person." *Calles*, 864 N.E.2d at 255.

Finally, Macy's argues that the Jacket's compliance with the flammability standards set forth in 16 C.F.R. § 1610 merits summary judgment in its favor. (R. 149, Macy's Mem. at 5-7; R. 171, Macy's Reply at 4-5.) Macy's concedes, however, that compliance with those standards is not dispositive of Plaintiff's design-defect claim. (R. 171, Macy's Reply at 5.) The parties are correct that compliance with 16 C.F.R. § 1610 is evidence that goes to whether the Jacket was unreasonably dangerous, but it is not conclusive proof warranting judgment as a matter of law.

*See Brech v. J.C. Penney Co.*, 698 F.2d 332, 334 (8th Cir. 1983) ("Although evidence that the gown surpassed federal standards is not necessarily conclusive proof that the garment was not unreasonably dangerous, it is nevertheless evidence which the court can consider on the issue."); *J.D.O. ex rel. Oldenburg v. Gymboree Corp.*, No. 12-CV-71 SRN/JSM, 2013 WL 6196970, at *3 (D. Minn. Nov. 27, 2013) ("Defendants cannot avoid liability simply because J.D.O.'s dress met the federal flammability standard."). Because Plaintiff has provided evidence under which a reasonable jury could find for Plaintiff under the consumer-expectation test, summary judgment is inappropriate. *See Kvapil*, 752 F.3d at 712.

The Court finds Macy's cited legal authority inapplicable to this case. In those cases, the court granted summary judgment because the plaintiff produced insufficient evidence to create an issue of fact. *Cf. Simien*, 566 F.2d at 558 (affirming summary judgment where, "[i]n the face of uncontroverted evidence which shows that . . . fabric was slow-burning and virtually impossible to ignite except when ignition was forced by exposing it for a period of several seconds to a 1650 [degrees Fahrenheit] butane flame, the testimony of [the plaintiff's expert] would not support even an inference that it is unreasonably dangerous for use as a jacket"); *Spiconardi v. Macy's E., Inc.*, 83 A.D.3d 472, 473 (N.Y. App. Div. 2011) ("Although mere compliance with minimum industry standards is, at most, some evidence to be considered and is not a shield to liability . . . the conclusory allegations raised by plaintiffs' expert, absent evidence that the product violated other relevant industry standards or accepted practices, or statistics showing the frequency of injuries arising out of the use of the product . . . were insufficient to create issues of fact warranting the denial of the motions."); *Coleman v. Cintas Sales Corp.*, 40 S.W.3d 544, 548 n.1 (Tex. App. 2001) ("Since compliance with the [Flammable Fabrics Act] is not dispositive, compliance cannot constitute grounds for summary judgment."). Accordingly,

the Court finds that Plaintiff has created a triable issue of fact on her strict liability, design-defect claim against Macy's, and the Court denies Macy's motion for summary judgment on this claim under the consumer-expectation test.

### 2. Risk-Utility Test

As noted above, while the Court has already concluded that Plaintiff may proceed to trial under the consumer-expectation test, the Court will still analyze Plaintiff's design-defect claims under the risk-utility test because the Court cannot predict what evidence the parties will put forward at trial, and the Court must nonetheless apply a risk-utility analysis to test the sufficiency of Plaintiff's negligence claims, discussed in further detail below. *See Jablonski*, 955 N.E.2d at 1154; *Mikolajczyk*, 901 N.E.2d at 352-53. "Under the risk utility test, a plaintiff may prove a design defect by presenting evidence of the availability and feasibility of alternate designs at the time of its manufacture, or that the design used did not conform with the design standards of the industry, design guidelines provided by an authoritative voluntary association, or design criteria set by legislation or governmental regulation." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 744 (7th Cir. 2007) (citation and internal alteration omitted); *see also Jablonski*, 955 N.E.2d at 1154 (listing the same factors as part of a "nonexhaustive list of factors . . . that may be relevant to the risk-utility analysis"). "Other factors that may be relevant include the utility of the product to the user and to the public as a whole, the safety aspects of the product including the likelihood that it will cause injury and the probable seriousness of the injury, and the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility." *Id.*; *see also Calles*, 864 N.E.2d at 260-61 (listing additional factors, such as the availability of a substitute product which would meet the same need and not be as unsafe, and the user's anticipated awareness of the dangers inherent in the product). "In

applying the balancing test, the court must initially balance factors it finds relevant to determine if the case is a proper one to submit to the jury." *Jablonski*, 955 N.E.2d at 1155.

Design-defect cases that have survived summary judgment on a risk-utility theory are typically those in which the plaintiff has provided some evidence to create a material issue of fact for at least one of the above risk-utility factors. For example, In *Hasan v. Cottrell, Inc.*, No. 10 C 5534, 2014 WL 4124254, at *11 (N.D. Ill. Aug. 21, 2014), the plaintiff provided expert evidence that an alternative design would have protected against the type of injury the plaintiff suffered in that case. In *Duffy v. Togher*, 887 N.E.2d 535, 547 (Ill. App. Ct. 2008), the court also denied summary judgment because the record created genuine issues of material fact with respect to all of the factors under the risk-utility test. *See also Calles*, 864 N.E.2d at 263 (denying judgment as a matter of law because there was a dispute of fact as to factors under the risk-utility test; therefore, "reasonable persons could differ on the weight to be given to the relevant factors . . . and thus could differ on whether the risks of the [product] outweigh its utility").

By contrast, cases that have not survived summary judgment are those in which all risk-utility factors weighed in the defendant's favor or the plaintiff failed to present any evidence to create a factual dispute as to any of the risk-utility factors. For example, in *Gutterman v. Target Corp.*, 242 F. Supp. 3d 695, 707 (N.D. Ill. 2017), *appeal dismissed*, No. 17-1791, 2017 WL 4772542 (7th Cir. Sept. 14, 2017), the court ruled that the case could not proceed to trial because all of the risk-utility factors weighed in the defendant's favor and plaintiff had not presented any evidence that created a dispute of fact relevant to any of the risk-utility factors. *See also Assaf v. Cottrell, Inc.*, No. 10 C 85, 2012 WL 4177274, at *4 (N.D. Ill. Sept. 19, 2012) (granting summary judgment because plaintiff presented no evidence allowing the court to balance the risks and benefits of the product's allegedly defective design). Similarly, in *Jablonski v. Ford*

*Motor Co.*, 955 N.E.2d 1138, 1159 (Ill. 2011), a negligence case that nonetheless applied the risk-utility test, the Illinois Supreme Court ruled that there was insufficient evidence to submit the plaintiff's design-defect claim to a jury because all of the risk-utility factors weighed in the defendant's favor: the product satisfied federal safety standards and industry practices; the plaintiff's expert acknowledged that plaintiff's proposed alternative designs would be costly and create more safety risks; the risk posed by the product had never manifested itself in the same product line in the 15 years before the defendant released the product at issue into the marketplace; and the plaintiff did not advance any evidence that an alternative design would have prevented the plaintiff's injury. *Id.* at 1157-59.

This case is more akin to the former group of cases that survived summary judgment. Turning to the risk-utility factors in this case, Plaintiff has presented evidence of an alternative design and its feasibility. Plaintiff has proposed alternative designs of the Jacket and Sleepwear that were available to Macy's at the time the Jacket was manufactured. (R. 161-3, Spivak Aff. ¶¶ 81, 84.) Plaintiff's expert opines that these alternative designs for the Jacket would have cost roughly the same, not ignited as easily, burned more slowly, and created a fire that would have been more easily extinguished. (*Id.* ¶¶ 81-85, 89.) With respect to promulgated design standards, Plaintiff does not provide much, if any, evidence that Macy's failed to abide by government regulations, industry standards, or criteria set by authoritative voluntary associations, and instead points to the fact that the Jacket failed 16 C.F.R. §§ 1615-16's flammability standards, a standard applicable to children's sleepwear and not the Jacket. (R. 163, Pl.'s Mem. Opp'n to Komar at 12; *see also* R. 165, Pl.'s Mem. Opp'n to Macy's at 4-7.) Plaintiff also points out that other companies in the industry place flammability warnings on adult clothing. (R. 161-3, Spivak Aff. ¶¶ 98-102.) Nonetheless, that Plaintiff has minimal evidence on this point does not require

summary judgment in Macy's favor. *See J.D.O. ex rel. Oldenburg*, 2013 WL 6196970, at \*3-4 (denying summary judgment and declining to give "conclusive weight to an industry standard," because although the plaintiff agreed that the clothing at issue satisfied federal regulations related to flammability, the plaintiff submitted enough evidence concerning a safer alternative design, the clothing's dangerous design, and quality of the clothing's fabric to survive summary judgment).

Plaintiff has also presented evidence concerning the likelihood the Jacket would cause injury, as well as the probable seriousness of the injury and the manufacturer's ability to eliminate the unsafe character of the Jacket without impairing its usefulness or making it too expensive to maintain its utility. Plaintiff has provided evidence showing that thousands of persons die each year or seek emergency room treatment due to their clothing catching fire, (R. 161-3, Spivak Report ¶¶ 98-100), and that the Jacket is designed in a way to almost guarantee serious injury if it catches fire, (*see* R. 161-4, Diller Aff. ¶ 29). Plaintiff also points to evidence showing that the Jacket could have been designed differently at roughly the same cost to eliminate its unsafe character. (R. 161-3, Spivak Aff. ¶¶ 81-82.) Macy's raises yet another factor the Court may consider in the risk-utility test—Plaintiff's anticipated awareness of the dangers inherent in the Jacket. *See Calles*, 864 N.E.2d at 260-61. Plaintiff has also submitted evidence to create a genuine dispute of fact as to this factor, as Plaintiff's expert opines that the general public does not know or appreciate the latent dangers concerning how easily the Jacket can ignite and result in a rapidly spreading fire. (*See* R. 161-3, Spivak Aff. ¶ 94; R. 161-3, Spivak Report ¶¶ 37, 64 100.)

Balancing all of the factors above, the Court is unable to conclude that no reasonable jury could find in Plaintiff's favor. A reasonable jury could attribute substantial weight to Plaintiff's

expert testimony and find that the Jacket, as it is designed, poses an unreasonable risk of harm to consumers that they are not fully aware of, and which can be eliminated by an alternative design at little cost to avoid what Plaintiff's experts claim, is a very high probability of serious injury in the event the Jacket catches fire. In short, Plaintiff has created disputes of fact that are material to several of the factors under the risk-utility test, and the Court determines, after balancing the factors, that Plaintiff has produced enough evidence to survive summary judgment. *See, e.g.*, *Hasan*, 2014 WL 4124254, at *11 (denying summary judgment because the plaintiff provided expert testimony concerning an alternative design that would have prevented the plaintiff's injury); *Calles*, 864 N.E.2d at 263 (denying judgment as a matter of law because there was a dispute of fact as to factors under the risk-utility test).

Macy's argues that the risk-utility factors weigh in its favor to the extent Plaintiff's expert advocates an alternative design of the Jacket that is entirely made of polyester or nylon, which Macy's argues deprives consumers of choosing cotton-polyester blend clothing for its comfort and style. (R. 171, Macy's Reply at 6-9; R. 174, Komar's Reply at 5-6.) In support, Macy's points to Plaintiff's expert testimony in which he states that consumers should be able to choose cotton-blend clothing. (R. 148-5, Spivak Dep. Tr. at 113-14, 126-27.) Plaintiff's expert, however, does not advocate removing cotton or cotton-blend clothing entirely from the market, but only some cotton-blend products, like the Jacket, which pose latent dangers of flammability that most consumers do not appreciate. (R. 148-5, Spivak Dep. Tr. at 118 (opining that he proposes eliminating only some cotton-blend fabrics that are "full cover, wide, loose and flowing" from the marketplace), 126-27 (opining that not all cotton-blend clothing is unreasonably dangerous, and that "[i]f you were wearing a pair of cotton/polyester leotards, the likelihood of ignition, given the propensity of the garment, the fit of the fabric, it's very low risk, very low likelihood");

R. 161-3, Spivak Report ¶ 64 (opining that the clothing at issue "combines easily ignitable cotton blend fabrics, plus a resultant scaffolding effect contributed by the combination of a charring component cotton fiber plus a melting component polyester fiber; intimately blended together in yarn and fabric").) These are disputed factual issues that must be resolved at trial, not on a motion for summary judgment where the Court cannot weigh conflicting evidence or assess the credibility of witnesses. *See Anderson*, 477 U.S. at 255; *J.D.O. ex rel. Oldenburg*, 2013 WL 6196970, at *4 ("[T]he fact that J.D.O.'s dress was predominantly cotton, alone, is insufficient to overcome summary judgment . . . . But when the predominantly cotton fabric of J.D.O.'s dress is considered in combination with the open and flowing design, the lightweight quality of the cotton, and potentially safer alternative designs, a reasonable jury could conclude that J.D.O.'s dress was unreasonably dangerous."). Thus, neither this Court's decision herein, nor Plaintiff's expert testimony, lead to the simple conclusion that a particular type of fabric is categorically dangerous; rather, there is a dispute of fact as to whether the Jacket at issue in this case was unreasonably dangerous considering its design, fabric, and other factors under the risk-utility test.

Macy's argument merely highlights factual disputes in this case that militate against summary judgment in its favor. While consumers may want to choose the Jacket for its style and comfort, this consideration does not give Macy's license to design a product that is unreasonably dangerous, as the risk-utility test looks at whether "the risk of danger inherent in the design of the product *outweighs the benefits of the design*." *Ferraro*, 721 F.3d at 846 (citation omitted, emphasis added); *see also Suarez v. W.M. Barr & Co., Inc.*, 842 F.3d 513, 520, 522-23 (7th Cir. 2016) (observing that the risk-utility test requires courts to balance whether the product's benefits outweigh the risk of danger inherent in the product's design). While the fabric used for

the Jacket may have been selected for style and comfort, these benefits must be weighed against the danger inherent in its design, and Plaintiff has presented evidence that creates a genuine dispute of material fact as to whether the style and comfort benefits of the Jacket outweigh any danger that may cause it to ignite too easily or catch fire in a manner that would make it very difficult to avoid severe injury. (*See* R. 161-3, Spivak Aff. ¶¶ 33-34, 94; R. 161-3, Spivak Report ¶¶ 37, 64 100; R. 161-4, Diller Aff. ¶ 29.) Macy's motion for summary judgment on Plaintiff's strict liability design-defect claim, therefore, is denied.

### B. Inadequate Warnings

Macy's also requests summary judgment on Plaintiff's strict liability, inadequate warning claims. (R. 149, at 13-14.) "A failure to warn of a product's known danger or instruct on the proper use of the product may also result in strict liability." *Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 108 (Ill. 2010). "A manufacturer has a duty to warn where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning." *Sollami v. Eaton*, 772 N.E.2d 215, 219 (2002) (Ill. 2002). There is no duty to warn, however, where the risk of harm is "open and obvious." *Gutterman*, 242 F. Supp. 3d at 705 (citation omitted). Plaintiff also bears the burden of showing that Macy's failure to warn of the Jacket's dangerous propensities proximately caused Plaintiff's injuries, that is, that an adequate warning "would have been read and heeded, and would have prevented the injuries in question." *Blaue v. Kissinger*, No. 03 C 9025, 2006 WL 2092380, at *5 (N.D. Ill. July 24, 2006); *see also Strang v. R.J. Reynolds Tobacco Co.*, No. 05 C 50108, 2008 WL 4951325, at *6 (N.D. Ill. Nov. 18, 2008) (granting summary judgment because plaintiff failed to produce any

evidence that he would have read and heeded a warning that smoking cigarettes was hazardous to his health).

Macy's argues that the Court should grant summary judgment against Plaintiff on her failure-to-warn claims because it had no duty to warn Plaintiff of an obvious danger such as fire, and because even if it had a duty to warn, Plaintiff has advanced no evidence that she would have read and heeded any warning. (R. 149, Macy's Mem. at 13-14; R. 155, Komar Mem. at 14.)

The Court agrees with Macy's, and need not discuss whether there was a duty to warn with respect to Plaintiff's strict liability, failure-to-warn claim. Even if there was, Plaintiff points to no record evidence showing that she would have read and heeded any warning regarding the Jacket's flammability. Instead, Plaintiff only argues that Macy's has "adduced no evidence" to support its conclusion that Plaintiff would not have read and heeded any warning. (R. 165, Pl.'s Mem. Opp'n to Macy's at 16.) This argument, however, misstates the parties' burdens on summary judgment.

While Defendants have the burden to inform the Court why a trial is not necessary, they may discharge that burden by pointing out "that there is an absence of evidence to support [Plaintiff]'s case." *Sterk*, 770 F.3d at 627 (citation omitted); *see also Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) ("[T]he movant's initial burden may be discharged by showing—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." (citation and internal quotation marks omitted)). Upon such a showing, Plaintiff must "go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence 'upon which a jury could properly proceed to find a verdict' in [Plaintiff's] favor." *Sterk*, 770 F.3d at 627 (citation omitted). Macy's has pointed out that there is no evidence that Plaintiff would have read and

heeded a warning regarding the Jacket's flammability, and Plaintiff has not gone beyond the pleadings to show there is evidence upon which a jury could find that she would have read and heeded a warning, an essential element of her failure-to-warn claims. (R. 163, Pl.'s Mem. Opp'n to Komar at 14; R. 165, Pl.'s Mem. Opp'n to Macy's at 16.)

Plaintiff argues that there is a "heeding presumption" for failure-to-warn claims, in other words, that, at this stage in the litigation, because Macy's provided no warnings on its product, the Court must presume that Plaintiff would have heeded any warning Macy's provided. (R. 163, Pl.'s Mem. Opp'n to Komar at 14; R. 165, Pl.'s Mem. Opp'n to Macy's at 16.) "The issue of whether Illinois applies the heeding presumption has not been clearly addressed by the Illinois Supreme Court." *In re Depakote*, No. 14-CV-847-NJR-SCW, 2015 WL 4776093, at *7 (S.D. Ill. Feb. 14, 2015). Plaintiff does not provide any support in Illinois law that a heeding presumption is applicable to any cases other than those involving a defective pharmaceutical, in which case "the manufacturer's duty to warn is to the physician, not to the consumer of the medication; the physician, in turn, has the duty to warn his patient." *See Giles v. Wyeth, Inc.*, 500 F. Supp. 2d 1063, 1065 (S.D. Ill. 2007). "This is called the learned intermediary doctrine." *Id.*; *see also Martin by Martin v. Ortho Pharm. Corp.*, 661 N.E.2d 352, 354 (Ill. 1996) (describing the learned intermediary doctrine as an "exception"). The legal authority Plaintiff relies on either applies the law of another state or indicates that the presumption only applies in "learned intermediary" cases. *See In re Depakote*, 2015 WL 4776093, at *7 n.5 (observing that the Illinois Supreme Court has not addressed whether it recognizes such a heeding presumption, and that "at least three federal district court cases, applying Illinois law, have applied the heeding presumption in learned intermediary cases, or indicated that they would apply such a presumption"); *Lambert v. B.P. Prod. N. Am., Inc.*, No. CIV. 04-347-GPM, 2006 WL 924988, at *5 (S.D. Ill. Apr. 6, 2006)

(applying Arizona law). Because this case does not implicate the learned intermediary doctrine and Plaintiff fails to provide any persuasive reason a heeding presumption would apply here, the Court grants Macy's motion for summary judgment as to Plaintiff's strict liability, failure-to-warn claim (Count III).

Even if the law required a "heeding presumption," Plaintiff has not provided any "real evidence of what additional or alternative warnings were needed," because she proposes no specific additional or alternative warnings that, if followed, could have prevented her injuries. *See Runge v. Stanley Fastening Sys., L.P.*, No. 4:09-CV-00130-TWP, 2011 WL 6755161, at *16 (S.D. Ind. Dec. 23, 2011) (applying Indiana law, which does recognize a heeding presumption, and observing that without evidence of what warnings were needed, "the jury would be left to speculate about what, if any, warnings could have prevented" the plaintiff's accident); *see also Phillips v. The Raymond Corp.*, 2006 WL 1156375, at *8 (N.D. Ill. April 25, 2006) ("[Plaintiff] has failed to suggest a different warning that would be adequate or even better; and has failed to identify a warning that would have caused him to have acted differently or would allegedly have prevented the injury he suffered. Under applicable precedent, a failure-to-warn claim, including one predicated on a strict liability theory, fails under such circumstances."). Therefore, Plaintiff provides no evidence from which a reasonable jury could conclude that a warning would have prevented her injuries.

Plaintiff's expert, Spivak, does opine that a "fire safety" label on the packaging of the garment and garment itself are necessary to inform consumers, generally, of the garment's flammability risk. (R. 161-3, Spivak Aff. ¶¶ 91-93.) He also provides examples of other warnings that have been used in the past on garments sold by L.L. Bean, Macy's, and Nordstrom. (*Id.* ¶¶ 99-105.) He does not, however, propose any warning for the Jacket, (R. 148-

5, Spivak Dep. Tr. at 131-32), opine that any specific warnings could have prevented Plaintiff's injury, or opine that any of these warnings can prevent injuries generally. *See Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 539 (7th Cir. 2000) (granting summary judgment, and ruling that plaintiff's expert's opinion that the product did not adequately warn consumers of its dangers was unreliable and not proper evidence to oppose summary judgment because Plaintiff's expert "never even drafted a proposed warning," which rendered "his opinion akin to 'talking off the cuff' and not acceptable methodology"); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2017 WL 1836435, at *18 (N.D. Ill. May 8, 2017) (noting that, to establish proximate cause in a failure-to-warn claim, "[g]enerally speaking, a plaintiff must show that had the manufacturer provided the warning at issue, the plaintiff's injury would have been avoided"). Plaintiff simply fails to point to any evidence, circumstantial or direct, for a reasonable jury to conclude that her injuries would not have happened "but for" the lack of warnings on the Jacket "as to make the conclusion of causation more probable as opposed to merely possible." *Baez*, 80 F. Supp. 3d at 868. There is also no evidence from which a reasonable jury could conclude that any failure to warn in this case was a "material element" or "substantial factor" in bringing about Plaintiff's injuries. *Dempsey v. Gen. Elec. Co.*, No. 04 C 53, 2006 WL 733550, at *5 (N.D. Ill. Mar. 21, 2006). Any such conclusion would be based on conjecture; however, "[i]t is axiomatic that liability cannot be premised merely upon surmise or conjecture as to the cause of the injury." *Lee v. Chi. Transit Auth.*, 1605 N.E.2d 493, 503 (Ill. 1992). Accordingly, the Court will grant summary judgment in Macy's favor on Plaintiff's strict liability, inadequate warnings claim.

## III. Implied Warranties

Although the exact implied warranty theories Plaintiff is pursuing are not specifically delineated in her fourth amended complaint, she appears to claim that Defendants breached both the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. (*See* R. 69, Fourth Am. Compl. ¶¶ 64-70, 116-22 (alleging, among other things, Defendants "knew the use for which the clothing was intended and impliedly warranted the clothing to be of merchantable quality and safe for such use"); R. 162, Pl.'s Mem. Opp'n to Walmart at 9-12; R. 163, Pl.'s Mem. Opp'n to Komar at 14-15; R. 165, Pl.'s Mem. Opp'n to Macy's at 18-19.)

Plaintiff's implied warranty of fitness for a particular purpose claims fail out of the gate. "No warranty for a particular purpose is created if the intended use is no different from the ordinary use of the product." *Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 804 (N.D. Ill. 2013); *see also Zaffiri v. Pontiac RV, Inc.*, 2012 IL App (4th) 120042-U, ¶ 72 ("It is long recognized in Illinois that even where a seller has reason to know of a buyer's particular purpose, no warranty for a particular purpose is created if the intended use is no different from the ordinary use of the product."). Plaintiff's claims for breach of the implied warranty of fitness for a particular purpose, however, are premised only on the Sleepwear's and Jacket's ordinary use as regular clothing, as that is how Plaintiff was using them on the day in question. (*See* R. 69, Fourth Am. Compl. ¶¶ 64-70, 116-22.) Plaintiff does not point to any evidence showing that the Jacket or Sleepwear were intended to be used for anything else other than as clothing in the ordinary course of her life. (R. 165, Pl.'s Mem. Opp'n to Macy's at 19; *see also* R. 164, Pl.'s Resp. to Macy's SOUMF ¶ 15 (Plaintiff conceding that "she wore the jacket either when she went out or around the house when she was cold").) Accordingly, the Court grants summary

judgment to Defendants on Plaintiff's claims for breach of the implied warranty of fitness for a particular purpose.

That leaves Plaintiff's claims for breach of the implied warranty of merchantability against Defendants. To prevail on these claims, Plaintiff must establish: "(1) a sale of goods, (2) that the seller of the goods is a merchant with respect to those goods, and (3) that the goods were not of merchantable quality." *Ferraro*, No. 08 CV 03638, 2012 WL 394256, at *12 (N.D. Ill. Feb. 6, 2012) (citation omitted), *aff'd Ferraro v. Hewlett-Packard Co.*, 721 F.3d 842 (7th Cir. 2013). Goods are not of "merchantable quality" if they are "unfit for their intended purpose." *Maldonado v. Creative Woodworking Concepts, Inc.*, 96 N.E.2d 662, 666 (Ill. App. Ct. 2003). "Illinois courts have recognized that claims for strict liability and breach of the implied warranty of merchantability are essentially coextensive in products liability actions[.]" *In re Depakote*, 2015 WL 4776093, at *10; *see also Nave v. Rainbo Tire Serv., Inc.*, 462 N.E.2d 620, 625 (Ill. App. Ct. 1984) ("The strict liability theory is essentially the liability of implied warranty divested of the contract doctrines of privity, disclaimer and notice." (internal citation and alteration omitted)).

Walmart and Komar again challenge proximate cause as to the implied warranty claims, arguing that they cannot be held liable because it is undisputed that the Sleepwear never came into contact with the stove. (R. 152, Walmart Mem. at 3-5; R. 155, Komar Mem. at 12-13.) For the same reasons discussed above regarding Plaintiff's strict liability, design-defect claims against Walmart and Komar, the Court will grant summary judgment against Plaintiff on the implied warranty of merchantability claims against Walmart and Komar. There is no evidence that the Sleepwear proximately caused Plaintiff's injuries, as discussed above. *See Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1341 (Ill. App. Ct. 1989) ("In an action based upon breach

of implied warranty . . . it is necessary to show the existence of the warranty, its breach, and *proximate cause*." (emphasis added)); *Reed v. City of Chicago*, No. 01 C 7865, 2006 WL 3147698, at *6 (N.D. Ill. Oct. 31, 2006) (listing proximate cause as an element of a claim for breach of the warranty of merchantability).

Thus, the remaining claim for breach of the implied warranty of merchantability is against Macy's. In its motion for summary judgment, Macy's only argues that Plaintiff has not provided enough evidence to prove that the Jacket was unfit for its intended purpose. (R. 149, Macy's Mem. at 18-19.) For the reasons detailed above in the Court's analysis on Plaintiff's strict liability claims, the implied warranty of merchantability claim against Macy's, however, may proceed to trial as Plaintiff has put forth enough evidence to show that the Jacket was unfit for its intended purpose. *See MacNeil Auto. Prod. Ltd. v. Cannon Auto. Ltd.*, No. 08 CV 0139, 2014 WL 3396114, at *5 (N.D. Ill. July 11, 2014) (granting summary judgment in plaintiff's favor on breach of implied warranty of merchantability claim because it was undisputed that defendant supplied plaintiff with a defective product).

## IV.    Negligence

For her negligence claims against Defendants, Plaintiff must establish "the existence of a duty, a breach of that duty, an injury that was proximately caused by that breach, and damages." *Jablonski*, 955 N.E.2d at 1153-54. Walmart and Komar argue that Plaintiff has not produced enough evidence of proximate cause to survive summary judgment on her negligence claims implicating the Sleepwear. (R. 152, Walmart Mem. at 6-8; R. 155, Komar Mem. at 13-15.) Because the principles of causation for strict liability and negligence are the same, the Court grants summary judgment to Walmart and Komar on Plaintiff's negligence claims. *See Kleen*, 749 N.E.2d at 29 (observing that the proximate cause analysis for strict liability and negligence

are the same). Plaintiff has failed to create a triable issue of fact for the reasons stated above in the analysis of Plaintiff's strict liability claims against Komar. Plaintiff provides no argument or evidence relating to any other possible theories of negligence, for example, that a failure to properly manufacture the Sleepwear or provide warnings proximately caused her injuries. Instead she argues only that the Sleepwear proximately caused her injuries because it "increased the available fuel load with a material known to burn at an accelerated rate and temperature making the fire more difficult to extinguish, with a vertical flame spread rate *faster* than that of the Macy's jacket." (R. 163, Pl.'s Opp'n to Walmart at 15.)[11] This argument, however, cannot overcome Plaintiff's failure, as described above, to point to any evidence showing that it was foreseeable that the Sleepwear would ignite after coming into contact with another article of clothing that was on fire. Without proximate cause, no cause of negligence can lie against Komar and Walmart, regardless of the factual basis for Plaintiff's negligence claim. *Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012) ("In Illinois, a successful negligence claim requires [the plaintiff] to prove . . . that the breach was the proximate cause of the plaintiff's injuries.") (citation omitted)).

Turning to the only remaining negligence claims—those asserted against Macy's—Plaintiff claims that Macy's was negligent for: (1) failing to properly design the clothing; (2) failing to properly manufacture the clothing; (3) failing to properly test the clothing; (4) failing to

---

[11] Additionally, all of Plaintiff's evidence as to the harm caused by a failure to warn is premised on the foreseeability of clothing catching fire due to its use in and around the kitchen and as part of daily life, not on the foreseeability of clothing catching fire from another article of clothing, which is what happened with the Sleepwear. (*See* R. 161-3, Spivak Report at 4-5.) Plaintiff has presented no evidence from which a reasonable jury could find that warnings would prevent injury caused by the Sleepwear catching fire from another article of clothing instead of directly from a stove. *See Broussard v. Houdaille Indus., Inc.*, 539 N.E.2d 360, 363 (Ill. App. Ct. 1989) ("In the warning cases, it has been held that there must be sufficient evidence supporting a reasonable inference, rather than a guess, that the presence of adequate warnings would have prevented the plaintiff's injuries.").

provide adequate warnings, instructions, and labeling for the clothing; (5) utilizing dangerous material and fabric; and (6) failing to perform appropriate post-market surveillance of the clothing. (R. 69, Fourth Am. Compl. ¶¶ 73-74.) With respect to Macy's alleged failure to properly manufacture the clothing, Plaintiff has not submitted any evidence that the manufacturing of the Jacket, as opposed to its design, was defective in any way. Instead, Plaintiff appears to have relinquished her claims based on a theory of defective manufacturing. (*See* R. 149, Macy's Mem. at 1 n.1.)

Nor do the sixth grounds for negligence—that Macy's failed to perform appropriate post-market surveillance—provide any grounds for a viable negligence claim. Plaintiff argues that *Jablonski* creates a duty to conduct post-market surveillance of a product if the product was defective at the time it was sold. (R. Pl.'s Mem. Opp'n to Macy's at 18.) *Jablonski*, however, compels the opposite conclusion. That case addressed the duty to issue post-sale warnings or undertake post-sale fixes of a product that is defective, and is critical of any such duty. *See Jablonski*, 955 N.E.2d at 1159 ("Nevertheless, a manufacturer is under no duty to issue postsale warnings or to retrofit its products to remedy defects first discovered after a product has left its control." (internal citation omitted)). *Jablonski* also noted that elements of any such claim would include "whether those to whom a warning might be provided can be identified, and whether a warning could effectively be communicated to those persons and acted on by the consumer." *Id.* at 1162 (internal citation and alteration omitted). Plaintiff does not point to any evidence on these issues, and therefore summary judgment is proper as to any negligence claim based on a theory of Macy's failure to conduct post-market surveillance. (*See* R. 164, Pl.'s Resp. to Macy's SOUMF (pointing to no evidence as to whether Macy's could identify who to send a warning to and effectively communicate that warning).)

Thus, the first, third, fourth, and fifth grounds of negligence against Macy's remain. The first, third, and fifth claimed grounds for negligence, however, are the same. Macy's use of dangerous fabric and its failure to properly test the Jacket's flammability[12] are part and parcel of Macy's alleged failure to reasonably design the Jacket. "A manufacturer has a nondelegable duty to design a reasonably safe product." *Jablonski*, 955 N.E.2d at 1154. "Thus, the key question in a negligent-design case is whether the manufacturer exercised reasonable care in designing the product." *Id.* "It has long been held that whether the manufacturer exercised reasonable care in designing its product also encompasses a balancing of the risks inherent in the product design with the utility or benefit derived from the product." *Id.* As detailed above in the Court's risk-utility analysis, Plaintiff has submitted evidence creating a genuine dispute of material fact as to whether the Jacket's risks outweigh its utility or benefits. Accordingly, the Court must deny summary judgment against Plaintiff on her negligent-design claim. *See id.* (ruling that "risk-utility balancing remains operative in determining whether a defendant's conduct is reasonable in a negligent-design case," and observing that "the balancing test developed for strict liability claims, which examines whether a product is unreasonably dangerous, is essentially identical to the test applied in determining whether a defendant's conduct in designing a product is unreasonable and that any distinction is mere semantics").

Finally, Plaintiff's fourth ground for negligence is that Macy's negligently failed to warn Plaintiff of the Jacket's defects. (R. 69, Fourth Am. Compl. ¶ 73(d).) In response, Macy's only

---

[12] For example, Plaintiff's evidence as to flammability testing is that Macy's should have performed additional testing before putting the Jacket out on the market. (R. 164, Pl.'s Resp. to Macy's SOUMF ¶¶ 33-35.) Macy's undertook this flammability testing to determine whether the Jacket's design was unusually flammable and therefore unreasonably dangerous. (*Id.*) Therefore, whether Macy's should have performed additional testing to uncover a defect in the product's flammability characteristics or design is incorporated within Plaintiff's negligent-design claim. (*See* R. 165, Pl.'s Mem. Opp'n to Macy's at 17 ("evidence of testing is merely for the jury's consideration" in determining whether Macy's was negligent).)

argument[13] is that it "had no duty to provide warnings as to the flammability of the velour jacket because there was no design defect in the jacket and no industry standards or regulations requiring such a warning." As noted above, however, the Court has ruled that Plaintiff has brought forth enough evidence to create a general dispute of material fact as to whether there was a design defect in the Jacket. "[W]hen a design defect is present at the time of sale, the manufacturer has a duty to take reasonable steps to warn at least the purchaser of the risk as soon as the manufacturer learns or should have learned of the risk created by its fault." *Jablonski*, 955 N.E.2d at 1159; *see also Solis v. BASF Corp.*, 979 N.E.2d 419, 443 (Ill. App. Ct. 2012) ("A manufacturer has a duty to warn where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer or distributor, possessed of such knowledge, knows or should know that harm may occur absent a warning."). The Court has determined that there is an issue of material fact as to whether the Jacket was unreasonably dangerous, and Plaintiff has submitted evidence that would allow a reasonable jury to conclude that Macy's should have known that the Jacket was unreasonably flammable before it went on the market. (*See* R. 172, Macy's Resp. to Pl.'s SAMF ¶ 7.) Thus, the Court cannot grant summary judgment for Macy's on Plaintiff's negligent failure-to-warn claim. *Jablonski*,

---

[13] The Court is aware that the standard for proximate cause is the same for negligence and strict liability, and that the Court has granted summary judgment on Plaintiff's strict liability, failure-to-warn claims due to Plaintiff's failure to present any evidence that can create a genuine dispute as to the existence of proximate cause for those claims. *See Kleen*, 749 N.E.2d at 29. However, "[a]s a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision." *United States v. King-Vassel*, 728 F.3d 707, 711-12 (7th Cir. 2013); *see also Lynch v. Ne. Reg'l Commuter R.R. Corp.*, 700 F.3d 906, 910-11 (7th Cir. 2012) ("Rule 56(f) thus allows a court to grant summary judgment on grounds not raised by a party *only after providing notice and a reasonable time to respond*." (emphasis added)). In addition, the Court cannot consider any additional arguments for summary judgment in Macy's reply that were not raised in its opening memorandum. *Kendrick v. Carter*, No. 12 C 19, 2014 WL 4413793, at *2 (N.D. Ill. Sept. 8, 2014) ("That party is limited to the grounds he chooses to raise in his opening memorandum and may not expand those grounds in reply.").

955 N.E.2d at 1159 (ruling that a duty to warn attaches to a product with a design defect).

Accordingly, Plaintiff's negligent failure-to-warn claim survives summary judgment.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Walmart's and Komar's motions for summary judgment (R. 150 and R. 153, respectively), and GRANTS in part and DENIES in part Macy's motion for summary judgment (R. 146) as set forth in this opinion. In accordance with footnote one of this opinion, Plaintiff's withdrawn claims for express warranty and defective manufacturing are hereby dismissed against all defendants. Since there are no remaining claims against Walmart and Komar, they are dismissed as parties in this lawsuit.

The remaining parties are DIRECTED to appear for a status hearing on January 9, 2018, at 9:45 a.m. for the purpose of setting a firm trial date for the remaining claims in this lawsuit. The remaining parties are requested to exhaust all settlement possibilities prior to the hearing.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: December 19, 2017**

46